**Americo MICHEL, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 433, Docket 74–2198.

United States Court of Appeals, Second Circuit.

Argued Nov. 4, 1974.

Decided Dec. 2, 1974.

Anna Durbin, Yale Law School, Michael J. Churgin, New Haven, Conn., for appellant.

David A. De Petris, Asst. U. S. Atty. (David G. Trager, U. S. Atty. E.D.N.Y., Paul B. Bergman, Asst. U. S. Atty., of counsel), for appellee.

Before KAUFMAN, Chief Judge, and ANDERSON and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal by Americo Michel from an order of the United States District Court for the Eastern District of New York, Hon. Jacob Mishler, Ch. J., entered on July 29, 1974, denying his

motion to vacate his sentence pursuant to 28 U.S.C. § 2255. We affirm.

On February 20, 1973, Michel pleaded guilty to count two of a three-count drug indictment. Count two charged Michel with knowingly and intentionally distributing approximately 121.4 grams of cocaine in violation of 21 U.S.C. § 841(a)(1), and aiding and abetting the same in violation of 18 U.S.C. § 2. The two other counts were dismissed on June 1, 1973 when he was sentenced to 5 years imprisonment and 5 years special parole, pursuant to 21 U.S.C. § 841(b)(1)(A). On April 23, 1974, Michel filed his present motion to vacate his sentence and withdraw his plea of guilty. He maintained below and here that his plea was not voluntary under Rule 11 of the Federal Rules of Criminal Procedure because he did not understand the meaning of the special parole term which was imposed, and further he did not understand that, as a resident alien, he was subject to deportation under 8 U.S.C. § 1251(a)(11) if convicted of a violation of the narcotics laws.

I

The court below held that the imposition of special parole is a direct consequence of a guilty plea and is therefore within the mandate of Rule 11. In Bye v. United States, 435 F.2d 177, 181 (2d Cir. 1970), this court held that, where a defendant's violation of the drug laws renders him ineligible for parole, the Government must bear the burden of proving that his guilty plea was entered voluntarily and with an understanding of the consequences of the plea. Since special parole adds time to a regu-

lar sentence,[1] it is within the *Bye* rationale. In *Bye* we said:

> [T]he unavailability of parole directly affects the length of time an accused will have to serve in prison. . . . It would seem that such a major effect on the length of possible incarceration would have great importance to an accused in considering whether to plead guilty.

435 F.2d at 180. We believe that the special parole here imposed is comparable and that the defendant not only should be advised that it will be imposed, but also should be asked by the court if he understands that fact. That is precisely what happened here. On February 20, 1973, Chief Judge Mishler meticulously observed the letter and spirit of Rule 11. The colloquy between the court and the defendant was not an empty ritual and Michel was not a monosyllabic participant. For example, when he indicated that he did not know the maximum prison term, he was advised by the court to consult with his counsel. After he had, the court again asked him if he then understood and Michel answered affirmatively. The court also stated:

> *In addition*, the Court must impose a minimum special parole term not less than three years.
>
> Do you understand that?
>
> The Defendant Michel: Yes.

(emphasis added.)

In light of this exchange, we cannot expect the court to have gone further to ask any more questions. Michel was voluble both at the time of his plea and at the time of his sentencing. He was represented by counsel who

---

1. 21 U.S.C. § 841(c) provides as follows:

A special parole term imposed under this section or section 845 of this title may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment. A special parole term provided for in this section or section 845 of this title shall be in addition to, and not in lieu of, any other parole provided for by law.

was present with him on both occasions. See Eagle Thunder v. United States, 477 F.2d 1326, 1328 (8th Cir.), cert. denied, 414 U.S. 873, 94 S.Ct. 142, 38 L.Ed.2d 92 (1973). When he was sentenced on June 1, 1973, counsel had in the interim been given the opportunity to examine the defendant's probation report, since the court had noted the possibility that Michel was not as involved as the Government indicated. Referring to the probation report defendant's counsel stated:

> I have a copy of it. I've gone over point by point with him . . . and I've had a long conversation with him and have gone through the complete details, both of the report and of the *consequences* of his actions.
> . . .
> (emphasis added.)

After an extended colloquy in which Michel was given the opportunity to withdraw his plea by the court, Michel pleaded guilty and was sentenced for a term of five years. The court stated: "In addition thereto, I impose a special parole term of five years."

In light of these circumstances, we conclude that there was compliance with Rule 11.[2] When a defendant, represented by and in the presence of counsel, states that he does understand the meaning of a consequence of a plea of guilty, we see no need for further inquiry. We therefore find no merit in the claim that Michel should be granted an evidentiary hearing to determine his alleged ignorance of the meaning of the special parole term. In the absence of detailed evidentiary facts, no hearing is required. O'Neil v. United States, 486 F.2d 1034, 1036 (2d Cir. 1973); United States v. Miranda, 437 F.2d 1255, 1258 (2d Cir. 1971). Here, aside from Michel's claim that he did not understand, there is only a brief affidavit of his counsel which states that, to the best of his knowledge, he did not discuss either the question of deportation or the meaning of special parole with his client. In view of the record before us—in which counsel told the court of his long conversation with Michel and that he had informed him of the consequences of his crime more than 3 months after the court had specifically advised Michel, in counsel's presence, that the special parole term must be imposed in addition to the jail term—it is difficult to understand how an evidentiary hearing is justified.

## II

This court in United States v. Parrino, 212 F.2d 919 (2d Cir.), cert. denied, 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954) long ago held that even where a defendant has been erroneously advised by counsel that his plea would not result in deportation, no "manifest injustice" within Fed.R.Crim.P. 32(d) would occur in the denial of a motion to withdraw a plea of guilty. The court held that deportation was not a direct but rather a collateral consequence of the plea. In

---

2. Appellant relies upon United States v. Richardson, 483 F.2d 516 (8th Cir. 1973), in which the court reversed a judgment of conviction because it was not clear that the defendant had understood that a special parole term would be imposed upon him as a consequence of his plea of guilty. However, there the court based its decision upon the fact that the record did not show that the defendant "had been adequately advised of the consequences of his plea by a reliable source and that he understood these consequences . . . . " 483 F.2d at 519. The relevant portions of the record, included as an appendix to the opinion, reveal that the court never informed Richardson that he would serve a special parole term or inquired as to his understanding of the meaning of special parole. The only reference to special parole came from the Assistant United States Attorney in response to a question from the judge as to maximum punishment on each count in the indictment. The Assistant stated the maximum prison term and added that, if imprisonment were imposed, "that imprisonment is followed by a minimum of a three-year special parole." 483 F.2d at 520. In short, no inquiry was made of the defendant by the court, in contrast with the present case, as to whether or not he understood that the court had to impose a minimum special parole term of three years.

United States v. Santelises, 476 F.2d 787 (2d Cir. 1973), this court affirmed the district court's determination, made without a hearing, that due process standards did not justify the vacatur of a plea where the defendant had not been advised that he was subject to deportation as a consequence. While recognizing that deportation was a serious sanction, this court followed *Parrino, supra,* noting in addition that there was before it no allegation of misleading by counsel, which had been an element in the earlier case. Since Santelises was convicted and sentenced in January 1966, prior to the amendment to Rule 11 [3] which became effective on July 1st, 1966, and which added the requirement that the judge in accepting a plea is required to determine that the defendant understands "the consequences of the plea," Chief Judge Kaufman's opinion in *Santelises* intimated no view what its decision would be if Rule 11 were applicable.

We hold that Rule 11 does not affect the long-standing rule in this as well as other circuits that the trial judge when accepting a plea of guilty is not bound to inquire whether a defendant is aware of the collateral effects of his plea.[4] It is clear that the Rule 11 amendment of 1966 was enacted to insure that the trial court inject itself into the proceeding personally to guarantee that there is a factual basis for the plea and that the defendant understands the nature and consequences of his crime.

However, there is no indication that the intent of the Rule was to broaden or extend the court's obligation to cover the ancillary or collateral consequences of his admission of guilt. On the contrary, the position of the Advisory Committee on the Criminal Rules indicates otherwise. The Note of the Committee on the 1966 amendment states: "The third change in the second sentence adds the words 'and the consequences of his plea' to state *what clearly is the law.*" 18 U. S.C. Rule 11, at 4489 (1970) (emphasis added), citing cases. The district judge, in our view, has the obligation to ascertain that the consequences of the sentence *he* imposes are understood. Deportation here, as before, was not the sentence of the court which accepted the plea but of another agency over which the trial judge has no control and for which he has no responsibility. We have insisted that even the indigent be represented by counsel, and we cannot seriously expect that the amendment to Rule 11 was intended to relieve counsel of his responsibility to his client. Where his client is an alien, counsel and not the court has the obligation of advising him of his particular position as a consequence of his plea.

Our reading of Rule 11 cases confirms the view we have taken. In Bye v. United States, *supra,* this court, as we have noted, while holding that ineligibility for parole "affects the length of time an accused will have to serve in prison," 435 F.2d at 180, reaffirmed the principle

---

3. The present Rule 11 provides, in part, that a judge shall not accept a plea of guilty "without first *addressing the defendant personally and* determining that the plea is made voluntarily with understanding of the nature of the charge *and the consequences of the plea.*" The italicized words were added by the 1966 amendment.

4. Failure to inform the defendant of the following results of his guilty plea has been held not to render that plea invalid: Cuthrell v. Director, Patuxent Institution, 475 F.2d 1364, 1366 (4th Cir.), cert. denied, 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973) (institution of separate civil proceedings against defendant for commitment to a mental health facility); Hutchison v. United States, 450 F.2d 930, 931 (10th Cir. 1971) (*per curiam*) (loss of good time credit); United States v. Vermeulen, 436 F.2d 72, 75 (2d Cir. 1970), cert. denied, 402 U.S. 911, 91 S.Ct. 1390, 28 L.Ed.2d 653 (1971) (possibility of imposition of consecutive sentences); Meaton v. United States, 328 F.2d 379 (5th Cir. 1964) (*per curiam*), cert. denied, 380 U.S. 916, 85 S.Ct. 902, 13 L.Ed.2d 801 (1965) (deprivation of rights to vote and to travel abroad); United States v. Cariola, 323 F.2d 180 (3d Cir. 1963) (deprivation of the right to vote in some jurisdictions); Redwine v. Zuchert, 115 U.S.App.D.C. 130, 317 F.2d 336 (1963) (*per curiam*) (possibility of undesirable discharge from armed forces).

that the accused "need not be informed prior to the acceptance of his guilty plea about every conceivable collateral effect the conviction entered on the plea might have." 435 F.2d at 179, citing, *inter alia*, United States v. Parrino, *supra*.

In United States v. Sambro, 147 U.S. App.D.C. 75, 454 F.2d 918 (1971) (*per curiam*), motion for rehearing *en banc* denied *per curiam*, 454 F.2d 924 (1971), the defendant had pleaded guilty to a narcotics charge without knowing or having been advised that his plea would result in his deportation; in fact, his counsel believed that deportation could be suspended by the court. He learned that deportation would result, however, *before* he was sentenced and claimed that he had not been properly advised of this consequence of his plea.[5] Even though he learned of the consequence at this early juncture, the circuit court affirmed the denial of his motion, relying *inter alia*, upon United States v. Parrino, *supra*, 454 F.2d at 922–923.[6]

 Appellant claims that, since deportation under the statute is automatic for the convicted drug offender, the consequence is direct and not collateral. The Government urges that this is not so, since a separate administrative civil proceeding must be commenced, and that application for "non-priority status" because of humanitarian factors might result in indefinite suspension of deportation. See 8 U.S.C. § 1254(a)(2).

We do not think that the distinction between a direct and a collateral consequence depends upon the degree of certainty with which the sanction will be visited upon the defendant. We do not agree that it is realistic that the trial judge should be under the obligation not only to draw up a complete list of possible consequences, but then in addition to determine the degree of probability of their happening. As we have indicated, he must assure himself only that the punishment that *he* is meting out is understood. The defendant has pleaded guilty to a crime for which the statute provides sanctions. This punishment properly circumscribes the judge's responsibility under Rule 11. To require that he anticipate the multifarious peripheral contingencies which may affect the defendant's civil liabilities, his eligibility for a variety of societal benefits, his civil rights or his right to remain in this country, all of which might give rise to later claims that the plea was not voluntary in the absence of an informed consent, has not been required in our jurisprudence, constitutionally or otherwise. Defense counsel is in a much better position to ascertain the personal circumstances of his client so as to determine what indirect consequences the guilty plea may trigger. Rule 11, in our view, was not intended to relieve counsel of his responsibilities to his client.

Affirmed.

5. See ABA Minimum Standards for Criminal Justice, Pleas of Guilty § 2.1 (1968).

6. While four judges dissented from the denial of the motion to *en banc* in *Sambro*, Judge Bazelon's dissenting opinion was largely directed to the point that the standard for withdrawing guilty pleas prior to sentence was "far more liberal" than at a later point. He also argued that a Rule 32 motion need not allege a failure to comply with Rule 11 "if the interests of justice so require." United States v. Sambro, *supra*, 147 U.S.

App.D.C. 75, 454 F.2d at 925, 925–926 (footnote omitted). While Judge Bazelon did cite with approval Judge Frank's dissent in our court in *Parrino*, it should be noted that Judge Frank in his dissent emphasized that the plea resulted from the grossly erroneous advice of defendant's counsel that he would *not* be deported. There is, as we have indicated, no claim of misleading advice by counsel here, but only the rather dubious claim that the subject was never discussed between counsel and his alien client.