**Vincent POERIO, Defendant (Petitioner),**

**v.**

**The UNITED STATES of America, Plaintiff (Respondent).**

**No. 75–C–826.**

United States District Court, E. D. New York.

Sept. 16, 1975.

Richard J. Reisch, Mineola, N. Y., for petitioner.

David G. Trager, U. S. Atty., Brooklyn, N. Y., for respondent; Paul B. Bergman, Asst. U. S. Atty., of counsel.

JUDD, District Judge.

## MEMORANDUM AND ORDER

This is a petition to vacate a plea of guilty and sentence, for unlawful possession of heroin, on the basis of the court's alleged failure to mention the requirement of a special parole term at the time the plea of guilty was accepted.

### Facts

Petitioner and one Nestor Machin were indicted for possession of heroin with intent to dispense and conspiracy to dispense and distribute, all in violation of 21 U.S.C. § 841(a). Mr. Machin was named in Count 2 for conspiracy and Count 3 for actual distribution and petitioner in Count 1 for actual possession with intent and Count 2 for conspiracy. Both defendants were originally represented by the same attorney, but a new attorney put in a notice of appearance for Mr. Machin a few weeks after their arraignment. Irving Katcher, an attorney with considerable experience in narcotic cases, represented petitioner throughout the case.

The government's case was based on transactions with an undercover agent and an informer. Petitioner provided the agent with a sample of heroin on the first occasion, in expectation of a sale of an ounce. He talked with the agent on the second occasion, when somewhat less than an ounce was delivered to the agent by petitioner's partner, Mr. Machin. According to the presentence report, the agents believed petitioner to be the more culpable of the two.

Petitioner had five prior convictions and had received sentences aggregating three to six years. His codefendant Machin had only two minor convictions involving sentences of $75.00 in fines and 15 days in jail.

On April 12, 1972, the date originally set for trial, both defendants appeared, but the case was adjourned to April 13 in expectation of pleas. On April 13, both defendants pleaded guilty, Mr. Machin to the conspiracy charged in Count 2, and petitioner to the charge of possession with intent under Count 1.

The caption of the minutes containing Mr. Machin's guilty plea refers to both defendants, and the appearances on page 2 note that Mr. Katcher was present as well as Mr. Machin's attorney.

The court explained to Mr. Machin that he could go to trial, starting that day, and described his rights. Mr. Machin answered yes to the question whether counsel had explained it to him. With respect to the penalty, the court stated,

Now, the charge against you is a conspiracy to dispense heroin, which is a violation of Section 846 of Title 21 of the United States Code. It says the offense is punishable by imprisonment or fine which may not exceed the maximum prescribed for the offense, and the offense, since it is heroin, is a particularly undesirable drug, is that you may be sentenced to a term of imprisonment of not more than fifteen years or a fine of not more than $25,-000, or both; and that the sentence shall include a special parole term of

at least three years. Has counsel told you that?

DEFENDANT MACHIN: Yes, Your Honor.

THE COURT: And you understand that?

DEFENDANT MACHIN: Yes, Your Honor?

Petitioner and Mr. Katcher had been standing before the bench during the pleading by the co-defendant. In connection with the Rule 11 questioning of the petitioner, the court referred to his previous colloquy with Mr. Machin. As referred to in the minutes, the Poerio portion of the proceedings included the following:

THE COURT: In offering to plead guilty, are you acting of your own free will?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And did you hear what I said to Mr. Machin about his right to a speedy trial today before a jury with the government required to prove his guilt beyond a reasonable doubt?

THE DEFENDANT: Yes, sir.

THE COURT: You know that you have those same rights?

THE DEFENDANT: Yes, sir.

THE COURT: And in a little more detail, that if you plead guilty it has the same effect as if a jury had found you guilty; you know that?

THE DEFENDANT: Yes.

THE COURT: If you didn't have money to pay for a lawyer for the whole trial the government would assign you a lawyer to defend you, and the penalty for Count 1, which is violation of Section 841(a), is *similarly* a term of imprisonment of not more than fifteen years and a fine of not more than $25,000, or both. (Emphasis added).

Have you been informed of that?

THE DEFENDANT: Yes, sir.

As to factual background, the defendant stated that he had heroin in his possession, in silver foil in his pocket, and that "I gave it to him."

After various adjournments, Mr. Machin was sentenced on July 5, 1972 to six years imprisonment plus four years special parole term, without prejudice to deportation proceedings, and petitioner was sentenced on July 31, 1972 to eight years imprisonment plus four years special parole term.

The petition in this case, signed and verified by an attorney other than the one who appeared at the pleading and sentence, recites the court's statement to petitioner about the penalty and asserts that petitioner "was not advised by the Court nor was he aware of at the time of pleading that defendant could be subjected to the additional consequences and punishment of the Special Parole Term. (21 U.S.C. Section 841(c), after serving the completion of the term of imprisonment imposed by the Court."

At the initial hearing on the Section 2255 petition, with petitioner's new attorney present, the court adjourned the matter for one week to provide for the presence of petitioner and to permit petitioner's attorney to obtain an affidavit from Mr. Katcher in support of the petition, if so advised. At the hearing the following week, the government offered no testimony because it preferred to present the issue whether the *McCarthy* case, described below, applied to a Section 2255 petition at all. The petitioner did not have any affidavit from Mr. Katcher and decided not to offer any evidence.

*Discussion*

Petitioner relies on *Ferguson v. United States,* 513 F.2d 1011 (2d Cir. 1975), and *Michel v. United States,* 507 F.2d 461 (2d Cir. 1974), which in turn rely on *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

The *McCarthy* case arose on an appeal from denial of a motion to permit withdrawal of a guilty plea. The case involved an income tax violation, in connection with which the defendant assert-

ed at the time of sentence that his failure to pay was neglectful and inadvertent. The sentencing court determined on the basis of the presentence report that th failure was not in fact inadvertent. The court did not inquire, however, concerning the defendant's understanding of the charge or the factual basis of the charge at the time the plea was accepted. The Supreme Court remanded the case to permit defendant to plead anew, refusing to follow cases that had directed an evidentiary hearing on the voluntariness of a plea where full compliance with Rule 11 of the Federal Rules of Criminal Procedure had not taken place.

In *Bye v. United States,* 435 F.2d 177 (2d Cir. 1970), the Court of Appeals for this Circuit applied the *McCarthy* case to a Section 2255 proceeding and held that Rule 11 required that a defendant be informed that he would be ineligible for parole under a plea to a tax count for a narcotic offense. The *Bye* case was cited with approval in *Michel,* but the court held it inapplicable because there had been mention of the special parole term at the time of the plea in *Michel,* although the meaning of the special parole term was not explained.

The *Ferguson* case held that relief should have been granted under Section 2255 where the defendant was not advised that a plea of guilty would subject him to a special parole term in addition to the regular term of imprisonment. The court refused to direct a hearing on whether there was a mistake in the stenographic record, because of the statement in the *McCarthy* case (394 U.S. at 470, 89 S.Ct. at 1173) that compliance with Rule 11 must be demonstrated *"in the record at the time the plea is entered."* (Emphasis in original). *See Ferguson v. United States,* 513 F.2d at 1013. There was nothing in the record to indicate that Ferguson had been informed in any way of his liability to a special parole term.

In *Brewington v. United States,* 74–C–971, which followed the *Ferguson* case in a Memorandum Order of the Court of Appeals, the government recommended a specific sentence of six years at the time of the plea, to conform with a recommendation made in another prosecution of Brewington in the Southern District of New York, and made no mention of a special parole term. The co-defendant had been informed of the special parole term, but no separate statements were made to Brewington and no separate questions put to him concerning penalties or concerning whether he had heard the colloquy with his co-defendant.

Thus there is no prior case which reaches the question whether it is sufficient compliance with Rule 11 if the consequences of the plea have been explained by the judge on the record in the presence of a co-defendant, but specific reference to the special parole term was not included in the abbreviated statement made to the second defendant to plead. The wording of the rule is that:

> The court may refuse to accept a plea of guilty, and shall not accept such plea . . . without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. F.R.Cr.P. 11.

Petitioner Poerio was personally addressed by the court at the time his plea was entered. In view of the fact that he had been advised by skilled counsel, experienced in the field, and that he had heard a full explanation of the consequences of a similar plea by his co-defendant, there was sufficient basis for the court to determine that petitioner understood the nature of the charge and the consequences of his plea, even though the entire statute was not spelled out word for word. It is also proper to give significance to petitioner's failure to take the opportunity to testify as to his own understanding or to obtain an affidavit or testimony from the attorney who represented him at the time of his plea. It is a fair inference from the record that petitioner knew from his communications with Mr. Katcher, as well as from what the court had said to

Mr. Machin in his presence, that not only was the penalty a term of imprisonment of not more than fifteen years, but that the sentence would include a special parole term.

When the defendant answered yes to the question, "Have you been informed of that?", the court was entitled to believe that his attorney, during the considerable period that preceded the plea, had advised the defendant of his rights and of what he was facing, in much greater detail than the court undertook to do in dealing with the second of the defendants who appeared for pleading on that day.

The court therefore is not faced with the necessity of determining, as the government requests, whether *Gates v. United States,* 515 F.2d 73 (7th Cir. 1975), justifies a restrictive reading of the Second Circuit's opinions in the *Ferguson* and *Michel* cases. The *Gates* case holds that the *McCarthy* rule does not apply in a proceeding under Section 2255 unless the error of the trial court is jurisdictional or constitutional, or results in a complete miscarriage of justice. Relief was nevertheless granted in the *Gates* case because the petitioners had been actually misinformed at the time of sentencing that they would be eligible for parole. In view of this misinformation, the court thought it unlikely that the defendants themselves thought that they would be ineligible for parole and it held that there were compound errors which presented exceptional circumstances that justified vacating their pleas. The Seventh Circuit repeated in *Bachner v. United States,* 517 F.2d 589 (1975), that nonconstitutional errors are not ground for relief under Section 2255 unless they are so fundamental as to constitute a complete miscarriage of justice. Similar considerations led the Fourth Circuit in *Bell v. United States,* 521 F.2d 713 (1975), to hold that omission of the special parole term was harmless error, and not a denial of due process. The question of harmless error, which was not presented in the *Ferguson* or *Brewington* cases, seems properly applicable here, for reasons which will be elaborated.

## Harmless Error

Automatic reversals for trial errors were common in nineteenth century cases, resulting in the release of defendants who were actually guilty, but these cases have been the subject of severe criticism. *See* 1 J. Wigmore, *Evidence* § 21, esp. at 368–71 (3d ed. 1940). Hypercritical reading of statements by judges at the time of guilty pleas should not become a modern counterpart of nineteenth century literalism. Yet that seems to be petitioner's theory.

The Supreme Court has recognized that cases should not be reversed for harmless errors in the admission or exclusion of evidence. *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), cited in *United States ex rel. Hines v. LaVallee,* 521 F.2d 1109, at 1113 (2d Cir. 1975).

The Supreme Court in *Harrington* and *Chapman* stated that a federal constitutional error cannot be disregarded unless it is harmless beyond a reasonable doubt. The same standard does not necessarily apply in cases involving only the requirements of procedural rules.

Chief Judge Traynor has written that convictions should not be reversed where there is a "high probability" that the error did not affect the result. R. Traynor, *The Riddle of Harmless Error* 35, 44–51, 80–81 (1970). The Second Circuit's own standard for granting a new trial due to the government's nondisclosure of additional impeaching evidence goes a long way towards adopting Judge Traynor's "highly probable" test. Only where there is a "significant chance" that the added disclosure would have induced a reasonable doubt in the minds of the jurors will the court order a new trial. *United States v. Rosner,* 516 F.2d 269, 273 (2d Cir. 1975); *United States v. Bonanno,* 430 F.2d 1060, 1063–64 (2d Cir.), *cert. denied,* 400 U.S. 964, 91 S.Ct. 366, 27 L.Ed.2d 384 (1970); *United States v. Miller,* 411 F.2d 825, 832 (2d Cir. 1969).

The New York Court of Appeals has recently used the phraseology of "a significant probability" in describing the standard for reversal for non-constitutional errors. *People v. McAuliffe,* 36 N.Y.2d 820, 370 N.Y.S.2d 900, 901, 331 N.E.2d 681 (1975); *People v. Crimmins,* 36 N.Y.2d 230, 367 N.Y.S.2d 213, 326 N.E.2d 787 (1975).

On the face of the record in this case, the likelihood that petitioner was unaware of the risk of a special parole term is minimal. He declined an offer to furnish proof that he was in fact unaware of the consequences of the plea, thereby withdrawing that issue from the case. It is proper to treat the case as one where petitioner in fact knew what he faced, but wants to put the government to proof of a 1971 transaction, which he admitted took place, because of a minor ellipsis in the court's statement to him.

The error in the *Poerio* case at the time of pleading does not rise to the level that requires permitting vacation of the plea. It is not necessary to decide the precise standard for vacating a plea, for to this court it is clear beyond a reasonable doubt both that petitioner's guilty plea was voluntary, and that it was made with knowledge that a special parole term was part of the penalty.

It is ordered that the petition be dismissed.