646 So.2d 253 (1994)
David L. HORTON, Appellant,
v.
STATE of Florida, Appellee.
No. 93-2036.
District Court of Appeal of Florida, First District.
November 22, 1994.
Rehearing Denied January 6, 1995.
*254 Nancy A. Daniels, Public Defender, P. Douglas Brinkmeyer, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., Richard Parker, Asst. Atty. Gen., for appellee.
KAHN, Judge.
Appellant David L. Horton appeals the trial court's denial of a motion to withdraw a no contest plea in a criminal case. We affirm because appellant has not demonstrated that his plea was entered involuntarily.
By information of April 26, 1993, the state charged Horton with two counts of uttering a forged instrument. On April 30, 1993, the prosecution noticed Horton that it would be seeking habitual offender sentencing. On May 10, 1993, the case came before the trial court for a plea. The following transpired:
THE COURT: All right. Mr. Horton.
THE DEFENDANT: Yes, sir.
THE COURT: Charged with uttering a forgery.
MR. MOONEYHAM [Defense Counsel]: I believe there are two counts, Your Honor.
THE COURT: That's correct, two counts. One alleges that on or about the 23rd of June, in '92, in Walton County, he published as true a check.
MR. ADKINSON [Assistant State Attorney]: Judge, the record should reflect also that we have filed a notice of habitual in this case.
THE COURT: A check with intent to injure or defraud Winn Dixie and Jeffery Bowers. And on or about June 23rd, 1992, at and in Walton County, Florida, the defendant uttered or published as true a check with intent to defraud Winn Dixie or Jeffery Bowers knowing that the check, both of them, checks, had been false or forged.
And there is a record of a notice filed April 30th, 1993, to classify Mr. Horton as an habitual felony offender pursuant to section 775.084 of the Florida Statutes. Mr. Mooneyham.
MR. MOONEYHAM: Your Honor, Mr. Horton offers his conditional no contest plea to these charges in accordance with the State's agreement that he would be sentenced to, to no more than ten years as an habitual offender and that that sentence would run concurrent with a sentence he's currently serving from Bay County.
THE COURT: Each of you raise your right hands and be sworn. We already did that? Okay. They start running together after awhile. Mr. Horton, you've heard me state the factual basis. Do you disagree with that statement of the facts in your case?
THE DEFENDANT: No, sir.
THE COURT: All right. You've heard Mr. Mooneyham announce a plea. Is that what you want to do today?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that by entering the plea to those two charges under those conditions you'll be waiving or giving up the right to a jury trial, the right at the jury trial to call and cross-examine witnesses, and the right to require the State to prove your guilt beyond a reasonable doubt?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that these two charges are third degree felonies for which you could receive up to ten years in state prison  excuse me, five years in state prison and be fined up to five thousand dollars on each count?

THE DEFENDANT: Yes, sir.

THE COURT: But if they are  if you're classified as an habitual felony offender you can receive up to double the statutory penalty?

THE DEFENDANT: Yes, Your Honor.

THE COURT: In other words, ten years in state prison on each count. Do you understand that?

THE DEFENDANT: (Indicating in the affirmative)

*255 THE COURT: You don't suffer from mental or emotional disorders, do you?
THE DEFENDANT: No, sir.
THE COURT: Are you under the influence of drugs or intoxicants at this time?
THE DEFENDANT: No, sir.
THE COURT: Has anyone represented to you anything other than what's been stated here on the record?
THE DEFENDANT: No, sir.
THE COURT: All right. Mr. Adkinson, is that your understanding of the plea agreement?
MR. ADKINSON: Yes, sir.
THE COURT: Mr. Horton, I'm gonna accept your plea of no contest to two counts of uttering a forged instrument. I'm gonna order a pre-sentence investigation, schedule the case for sentencing on June 14th at nine o'clock in the morning with the understanding that, depending on the pre-sentence report, the plea will be accepted under the conditions that it was offered and sentence would take place at that time depending on the scheduling for that day. Okay.
The case came back before the trial court for sentencing on June 14, 1993. At that time the following exchange occurred between the court, appellant and counsel:
THE COURT: It was my understanding that there was a plea entered and an agreement that you would be classified as an habitual offender and sentenced to a concurrent ten-year sentence with Bay County with charges for which you've been sentenced in Bay County. Is that  was that your understanding of the plea here?
THE DEFENDANT: Yes, sir. But I would like to try to withdraw that plea because at the time I didn't realize that I would be doing six years on this ten-year sentence for two checks for a total of a hundred dollars.
MR. ADKINSON: I'm sorry. What was the purpose of his intent to withdraw?
THE COURT: His statement was that he would like to withdraw his plea because at the time he entered it he didn't realize he would be doing six years for two checks, one of which was for  well, the total of which was for less than a hundred dollars. Is that what you said?
THE DEFENDANT: Yes, sir.
THE COURT: Okay. Mr. Mooneyham.
MR. MOONEYHAM: Your Honor, I'm just passing on what he told me, he wanted to withdraw the plea.
THE COURT: Okay. Mr. Horton, did you  Have you got any other reasons to state why the plea should be withdrawn?
THE DEFENDANT: No, sir. But since I'm already here, I would agree to go ahead and cop out to a sentence not to exceed what I've already got.
THE COURT: Which is?
THE DEFENDANT: Six-year habitual sentence and three consecutive buys concurrent with the six.
THE COURT: At the time you entered the plea in this court I believe we went through the plea question and answer scenario and that you indicated to me that you fully understood what you were doing and that you understood the plea and the consequences thereof. Didn't you?
THE DEFENDANT: Yes, sir.
The appellant argues we must reverse in accordance with Ashley v. State, 614 So.2d 486 (Fla. 1992), because he was never advised that he would lose gain time and control release considerations should he be sentenced as an habitual offender pursuant to his guilty plea. We find that the plea colloquy set out above establishes that Horton did not enter an involuntary plea. We further do not believe that our supreme court intended for Ashley to stand for a mechanical reversal in cases where a plea was entered and accepted voluntarily, after the defendant had proper notice of intent to seek habitual offender sentencing.
In Ashley the defendant entered a guilty plea prior to being informed that he would be treated as an habitual offender. Under the holding in that case it was error to deny Ashley's motion to withdraw his plea when the state gave notice of intent to habitualize after Ashley had entered a guilty plea and gone through a plea colloquy that did not mention the possibility of habitual offender *256 sentencing. As we have observed, "Ashley turned primarily on the prosecution's failure to give notice of intent to habitualize before the plea. It therefore remains for the supreme court to clarify the application of that case in other factual contexts." Heatley v. State, 636 So.2d 153, 154 (Fla. 1st DCA 1994), rev. denied, 645 So.2d 452 (Fla. Sept. 7, 1994).
Under the Rules of Criminal Procedure adopted by the Supreme court, a trial judge should, in order to determine the voluntariness of a plea, place the defendant under oath, address the defendant personally, and determine that the defendant understands: (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; (2) if the defendant is not represented by an attorney, that the defendant has the right to be represented by an attorney at every stage of the proceeding against him or her, if necessary, one will be appointed to represent him or her; (3) that the defendant has the right to plead not guilty or to persist in that plea if it has already been made and that the defendant has a right to be tried by jury, with the constitutional rights attendant to a jury trial; (4) that if the defendant pleads guilty or nolo contendere without express reservation of the right to appeal, the defendant gives up the right to appeal all matters relating to the judgment; (5) that if the defendant pleads guilty or is adjudged guilty after a plea of nolo contendere there will not be a further trial of any kind; and (6) the complete terms of any plea agreement, including specifically all obligations the defendant will incur as a result. Fla.R.Crim.P. 3.172(c).[1]
In State v. Ginebra, 511 So.2d 960 (Fla. 1987), superseded by rule as stated in State v. De Abreu, 613 So.2d 453 (Fla. 1993), the supreme court held that an alien defendant may not collaterally attack a guilty plea on the basis that counsel was ineffective in failing to advise the defendant that the guilty plea could subject the defendant to deportation. The court noted: "[T]here are numerous other collateral consequences of which a defendant does not have to be knowledgeable before his plea is considered knowing and voluntary. See Michel v. United States, 507 F.2d 461 at 465, n. 4 [(C.A. 2 Cir.1974)]" 511 So.2d at 962. Since Ashley did not mention the foregoing language from Ginebra, we cannot but conclude that the primary consideration in Ashley was the state's complete failure to advise the defendant of its intent to seek habitual offender sentencing prior to the entry of the guilty plea. In a footnote, seized upon by the appellant in the present case, the Ashley court stated: "The defendant should be told ... that habitualization may affect the possibility of early release through certain programs... ." 614 So.2d at 490, n. 8. While adherence to this aspirational language might well provide a more watertight response to a later motion to withdraw a plea, it does not necessarily follow that the mere failure to advise a defendant that he or she will have to serve as much as 60% of a sentence renders a plea involuntary.[2]
The trial judge in the present case asked Horton if he understood that the habitual felony offender classification could lead to up *257 to double the statutory penalty in state prison and that in fact he could receive ten years in state prison on each count. Horton indicated he understood. The court reiterated that ten years in state prison would be available for each count, and again asked if Horton understood that. The defendant responded affirmatively. Toward the conclusion of the colloquy, the court inquired whether anyone had represented to Horton anything other than what was stated on the record at the plea colloquy, to which Horton responded in the negative. The trial court is always well advised, when accepting a plea, to ascertain whether any promises were made to the defendant apart from those discussed during the plea colloquy. It becomes, at that juncture, incumbent upon the defendant to reveal any additional expectations he may have. Simmons v. State, 611 So.2d 1250, 1253 (Fla. 2d DCA 1992). Nothing which transpired during the plea colloquy created or strengthened Mr. Horton's subjective expectation that he would serve only a small fraction of his sentence. We find that it would serve no useful purpose nor preserve any legitimate right of the defendant to reverse the conviction where there is absolutely no indication that the plea was entered involuntarily. Even while he was urging upon the court his motion to withdraw, Horton, arguing on his own behalf, admitted the voluntariness of his earlier plea:
THE COURT: At the time you entered the plea in this court I believe we went through the plea question and answer scenario and that you indicated to me that you fully understood what you were doing and that you understood the plea and the consequences thereof. Didn't you?
THE DEFENDANT: Yes, sir.
We find no error in the trial court's denial of appellant's motion to withdraw his plea.
AFFIRMED.
ALLEN and MICKLE, JJ., concur.
NOTES
[1] The rule has two other requirements, namely that the trial judge shall determine if the defendant understands that if he or she pleads guilty or nolo contendere, the trial judge may ask the defendant questions about the offense to which he or she has entered a plea, and that the answers to such questions may later be used against the defendant in a prosecution for perjury, and that the guilty plea may subject the defendant to deportation if he or she is not a United States citizen. Fla.R.Crim.P. 3.172(c)(6), (8). Horton was subjected neither to questioning by the judge concerning his offense, nor to deportation.
[2] If footnote 8 of Ashley in fact creates a per se rule of reversal, it would make no sense to limit its application to habitual offender cases. The present case raises the question of eligibility for control release, as established by section 947.146, Florida Statutes (1991). While the statute excluded habitual offenders from control release consideration, section 947.146(4)(g), it also excluded a host of other prisoners, including those previously convicted of certain sex crimes, certain crimes of violence, including a sex act, certain crimes committed with the intent to commit sexual battery, certain crimes committed against state prosecutors, judges, or justices, and murder. § 947.146(4)(a)-(i). A similar observation would apply to provisional credits, section 944.277, Florida Statutes (1991), repealed by Chapter 93-406, Laws of Florida.