*Lozano v. United States of America*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of February, two thousand nineteen.

PRESENT:
> JON O. NEWMAN,
> SUSAN L. CARNEY,
> RICHARD J. SULLIVAN,
> > *Circuit Judges.*

―――――――――――――――――――――――――――

JIMMY LOZANO,

> *Petitioner -Appellant,*

> v.                                                                    No. 17-3800-cv

UNITED STATES OF AMERICA,

> *Respondent- Appellee.*

―――――――――――――――――――――――――――

FOR APPELLANT:               STEPHANIE M. CARVLIN, Law Office of
                             Stephanie M. Carvlin, New York, NY.

FOR APPELLEE:                NICHOLAS FOLLY, Asst. U.S. Atty., New
                             York, NY (Anna M. Skotko, Asst. U.S.
                             Atty., New York, NY *on the brief*), *for*

Geoffrey S. Berman, U.S. Atty. for the Southern District of New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Koeltl, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the case is **REMANDED**.

Jimmy Lozano appeals from the October 20, 2017, judgment of the District Court for the Southern District of New York (John G. Koeltl, District Judge) denying his motion for a writ of *coram nobis* to vacate his 2004 conviction for Hobbs Act robbery. He contends that his guilty plea resulting in that conviction was involuntary because the Government affirmatively misrepresented his citizenship status by issuing him a passport and therefore misled him as to the consequences of his plea. His claim arises from the following facts.

Lozano was born in the Dominican Republic on February 9, 1981, and entered the United States with his mother and other family members as a lawful permanent resident in 1993 when he was twelve years old. On July 24, 2000, when Lozano was 19, his mother became a naturalized citizen of the United States. One of the requirements for an alien child to acquire United States citizenship is that a parent has become a naturalized citizen before the child has reached the age of 18. *See* 8 U.S.C. § 1431(a)(2)).

Two years later, Lozano applied for a United States passport, and the Department of State issued one to him. A United States passport "ha[s] the same force and effect as proof of United States citizenship as certificates of naturalization or of citizenship issued by the Attorney General or by a court having naturalization jurisdiction." 22 U.S.C. § 2705(1).

2

In November 2004, Lozano pled guilty to conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951. The District Court advised Lozano of several consequences of his plea, and then stated, "There are no other collateral consequences that I should mention, I take it?" The prosecutor said, "I believe the defendant is a U.S. citizen." However, the Presentence Report ("PSR") stated that Lozano was a citizen of the Dominican Republic who had entered the United States in 1998 and was a legal permanent resident. There were no objections to the PSR. The District Court sentenced Lozano to a term of 33 months' imprisonment. He was released from custody in February 2006.

After Lozano's passport expired in late 2012, he applied for a renewed passport, which the State Department issued to him.

In August 2015, Lozano pled guilty to conspiracy in violation of 21 U.S.C. § 846 to distribute narcotics in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c). He was sentenced to time served followed by three years of supervised release.

After Lozano pled guilty but before he was sentenced for the drug offense, the State Department sent him a letter stating that it was revoking his passport because it had been issued in error. Lozano contends he did not receive that letter.

After Lozano was sentenced in the District of Vermont, officials from the Department of Homeland Security served him with a notice to appear for removal proceedings. The notice stated that Lozano was not a citizen of the United States and that he was removable based on his 2005 conviction, which constituted an aggravated felony. The removal proceedings are ongoing.

In January 2017, Lozano filed a petition in the Southern District of New York for a writ of error *coram nobis*, seeking to vacate his 2005 Hobbs Act robbery conviction on the ground that it was involuntary and unknowing in violation of the Due Process Clause. He argued that he was misinformed of the immigration consequences of his plea because all parties, including the Court, believed that he was a citizen at the time of his plea. He represented that the Government, through the State Department, misled him about his immigration status, and that he would not have pled guilty if he had known that he would be subject to deportation.

The District Court denied the petition. In denying the petition, the Court noted that while some cases have indicated "that the Fifth Amendment now contains a right to accurate deportation information prior to the entry of a guilty plea, Lozano has identified no authority that endorses squarely such a rule," and even if such a rule now existed it could not be applied retroactively to benefit Lozano. The Court also noted that the appellant "may not be able to meet the second requirement for *coram nobis* relief, namely[,] that sound reasons exist for [his] failure to seek earlier appropriate relief" because the PSR stated that he was not a citizen at the time. However, the Court made no finding on this issue and did not deny relief on that basis.

A petitioner seeking *coram nobis* relief "must demonstrate that 1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *Foont v. United States*, 93 F.3d 76, 79 (2d Cir. 1996) (internal citations, quotation marks, and alterations omitted).

4

The District Court concluded that Lozano's guilty plea to the Hobbs Act robbery offense was not entered in violation of the Due Process Clause of Fifth Amendment because that clause did not assure a right to receive accurate information concerning deportation and, in any event, such a right was not applicable retroactively. However, Lozano claims his plea was involuntary, not only for lack of accurate information, but because the Government affirmatively misled him to believe that he was a United States citizen and not subject to deportation.

Before we consider the merits of this claim, two preliminary issues need to be resolved by the District Court. The first issue is whether "sound reasons exist for failure to seek appropriate earlier relief," *Foont*, 93 F.3d at 79 (alteration omitted), in view of the fact that the PSR reported that Lozano was not a United States citizen, which arguably obliged inquiry to determine whether he was a citizen. The District Court adverted to this issue, but did not resolve it. On remand, the District Court should resolve the issue.

The second issue is whether Lozano would not have entered a guilty plea had he known that he was subject to deportation. If he would have pled anyway, granting a writ of *coram nobis* is not necessary "to achieve justice," *Foont*, 93 F.3d at 79. "A finding of impermissible conduct is a necessary but not a sufficient condition for the success of an involuntariness argument. The petitioner also must show a reasonable probability that, but for the misconduct, he would not have pleaded guilty and would have insisted on going to trial." *Ferrara v. United States*, 456 F.3d 278, 293-94 (1st Cir. 2006) (internal citation, quotation marks, and alterations omitted)); *see also United States v. Avellino*, 136 F.3d 249, 256 (2d Cir. 1998) (applying the reasonable probability standard to a *Brady* violation).

5

We will therefore remand to the District Court for resolution of the two issues we have identified. Because the District Court's resolution of these issues is preliminary to our consideration of the merits of the appeal, the remand will be made pursuant to *United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994), so that after the District Court enters an order making its determinations, either party may restore this appeal to our jurisdiction by sending a letter to the Clerk of this Court within twenty-one days of such order.

On a final note: Judge Sullivan's dissent points to our precedent describing deportation as "a collateral, rather than direct, consequence of conviction" and holding that "a district court is not required to explain the possible immigration consequences of a plea in order to ensure its voluntariness." *Infra* Sullivan, *J.*, dissent. But, as we have previously observed in *United States v. Couto*, 311 F.3d 179 (2d Cir. 2002), the cases that purportedly control (and that are cited by the dissent here) were all decided before the 1990s, when Congress enacted significant changes to immigration law that shifted deportation from a remote and merely possible consequence of certain convictions to being "virtually certain" for noncitizens. *Id.* at 189-90; *see also Padilla v. Kentucky*, 559 U.S. 356, 360-66, 374 (2010) (recounting the history of immigration legislation in the 20th century, observing that "recent changes in our immigration law have made removal nearly an automatic result for a broad class of noncitizen offenders," and holding that noncitizen defendants have a Sixth Amendment right to be informed "whether [a] plea carries a risk of deportation"). In light of these developments, we noted in *Couto* that the question whether deportation should be deemed a "direct consequence" of a guilty plea "deserves careful consideration" anew. 311 F.3d at 190. For these reasons, we do not believe that *Michel v. United States*, 507 F.2d 461 (2d Cir. 1974), controls this petition.

SULLIVAN, Circuit Judge, dissenting:

I respectfully dissent. This Circuit has consistently held that deportation is a collateral, rather than a direct, consequence of conviction and that a district court is not required to explain the possible immigration consequences of a plea in order to ensure its voluntariness. *See, e.g.*, *Michel v. United States*, 507 F.2d 461, 465 (2d Cir. 1974); *United States v. Santelises*, 476 F.2d 787, 789-90 (2d Cir. 1973); *United States v. Parrino*, 212 F.2d 919, 921-22 (2d Cir. 1954). While dicta in several cases have sown uncertainty regarding the future prospects of that precedent in light of intervening developments in immigration law and the Supreme Court's Sixth Amendment ruling in *Padilla v. Kentucky*, 559 U.S. 356 (2010), *see, e.g.*, *United States v. Youngs*, 687 F.3d 56, 62-63 (2d Cir. 2012); *United States v. Couto*, 311 F.3d 179, 189-90 (2d Cir. 2002), *abrogated on other grounds by Padilla*, 559 U.S. 356, the fact remains that these precedents have never been overruled. Indeed, it bears noting that all Circuits that have squarely addressed the issue since *Padilla* have reaffirmed the holding that immigration consequences remain collateral for Fifth Amendment purposes. *See United States v. Ataya*, 884 F.3d 318, 323 n.3 (6th Cir. 2018); *United States v. Delgado-Ramos*, 635 F.3d 1237, 1238-41 (9th Cir. 2011); *see also United States v. Carrillo-Estrada*, 564 F. App'x 385, 387 (10th Cir. 2014). Therefore, unless and until *Michel* is overturned by the Supreme Court or by this Court proceeding *en banc*, it remains good law – meaning that district courts in this Circuit are under no constitutional obligation to "anticipate the multifarious peripheral contingencies which may affect the defendant's civil liabilities, his eligibility for a variety of societal benefits, his civil rights or his right to remain in the country, all of which might give rise to later claims that the plea was not voluntary in the

absence of informed consent . . . ." *Michel*, 507 F.2d at 466. In light of this binding precedent, I do not share the majority's view that the two issues identified for resolution on remand are "preliminary issues" and would affirm the judgment below.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court
