**Jaime AVILES, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 75 Civ. 3094 (72 Cr. 115) E.L.P.**

United States District Court,
S. D. New York.

Oct. 21, 1975.

Richard I. Rosenkranz, Brooklyn, N. Y., for petitioner.

Paul J. Curran, U. S. Atty., for the Southern District of New York, New York City, for respondent; Steven K. Frankel, Sp. Atty., U. S. Dept. of Justice, of counsel.

PALMIERI, District Judge.

Jaime Aviles moves pursuant to 28 U.S.C. § 2255 to vacate a plea of guilty entered before this Court on February 15, 1973. The basis for his motion is that decisions of the Second Circuit handed down subsequent to his plea and retroactively applied, permit him to claim an infirmity in his plea due to the failure of the Court to advise him of special parole.

*I*

### The Factual Background

Aviles, a seller of heroin with previous federal and state convictions for violations of the narcotics laws, pleaded guilty on February 15, 1973, to a one count indictment charging him with the distribution and possession with intent to distribute a Schedule I narcotic drug in violation of 21 U.S.C. § 841(a)(1). He was represented at all relevant steps in these proceedings, including this petition, by the same experienced counsel. He signed a formal waiver of constitutional rights and represented to the Court, through this form,[1] through his counsel, and independently, that he was aware of the possible penalty and had been fully advised on the subject by his attorney.[2] Immediately after the entry of this plea he pleaded guilty to an information charging him with a previous conviction for a narcotics offense under the federal narcotics laws and admitted to having been sentenced to a term of four years in prison by the United States District Court for the Eastern District of New York. The maximum sentence to which it was represented that he

---

1. "My attorney has explained to me the nature of the charges against me, my constitutional rights, and the punishment that could be imposed by the court upon my plea of guilty."

   \*    \*    \*    \*    \*

   "I, the attorney for the above-named defendant, have . . . explained to him . . . the punishment that could be imposed upon his guilty plea. . . . ." Acknowledgment of Advice as to Constitutional Rights With Respect to Guilty Plea, attached hereto as Appendix A.

2. "MR. ROSENKRANZ: Your Honor, I have warned the defendant of his rights, and we both have acknowledged this advice of rights form. I have previously done so.

   "THE COURT: You have discussed that with him?

   "MR. ROSENKRANZ: Yes.

---

\*    \*    \*    \*    \*

"THE COURT: \* \* \* Before entering this plea, did you discuss with your attorney all of the matters which are set forth on Court's Exhibit 1 for identification entitled "Acknowledgment of advice as to constitutional rights with respect to a guilty plea"?

"THE DEFENDANT: Yes, sir.

\*    \*    \*    \*    \*

"THE COURT: And have you discussed with your lawyer, Mr. Rosenkranz, who is standing next to you, the possible penalty to which you are exposed by your plea of guilty in this case?

"THE DEFENDANT: Yes, sir."
[Transcript of Proceedings, *United States of America v. Jaime Ariles*, 72 Cr. 115, February 15, 1973, pp. 3–5.]

was exposed by his plea of guilty was 25 years in prison [3] and Aviles' counsel agreed that this was the case.[4]

Petitioner now urges that his sentence be vacated and that he be permitted to plead anew to the indictment on the ground that the Court failed to inform him that his plea would subject him to a term of special parole. A previous petition pursuant to 28 U.S.C. § 2255, based on wholly different grounds, was denied by this Court without a hearing on January 31, 1975 (Docket No. 74 Civ. 4905, see opinion of this Court dated January 31, 1975.)

The minutes of the plea proceedings here in issue disclose that the Court did not inform Aviles of the requirement of special parole prior to the acceptance of his plea. Although there was no require-ment at that time that such information be directly imparted to him by the Court, the contention is made that the plea was invalid and should be set aside by virtue of the retroactive application of a sub-sequently adopted rule. There is no af-fidavit by Aviles alleging that he was not aware of mandatory special parole or that such awareness would have changed his plea. There is no affidavit by his attorney to the effect that he did not inform Aviles of special parole or that, to the best of his knowledge, Aviles was unaware of it. At a conference call-ed by the Court, Aviles' attorney said that he informed Aviles only of the max-imum prison sentence [5] and declined an opportunity to present evidence on these matters saying that an evidentiary hear-ing would serve no purpose since he based the petition solely on the minutes of the plea proceedings.

3. This maximum was incorrectly stated. There was some confusion as to which sec-tion of the United States Code was applicable. The Assistant United States Attorney thought to have Aviles declared a "dangerous special drug offender" under 21 U.S.C. § 849, the maximum penalty for which is 25 years as he stated. 21 U.S.C. § 849(b). However, this is not the applicable section for two reasons. First, the detailed filing and hearing require-ments were not complied with. 21 U.S.C. § 849(a) and (b). Second, § 849(c) gives priority to any other applicable section with a greater maximum. Since the Government filed a second offender information, the § 841(b)(1)(A) maximum (30 years in prison, 6 years minimum special parole) was the maxi-mum sentence Aviles faced. However, Aviles has not raised this error in his petition and it is not here in issue.

4. "MR. DOUGHERTY: Your Honor, I be-lieve with the dangerous drug offender in-formation the penalties are increased to a 25-year maximum. I believe that is section 849 of Title 26 [sic; should be 21].
"THE COURT: Do you agree, Mr. Rosen-kranz?

"MR. ROSENKRANZ: Yes, sir.
"THE COURT: That he is exposed to a possible penalty of 25 years with the sec-ond offender information in the case?
"MR. ROSENKRANZ: Yes, sir." [Tran-script, p. 5]

* * * * *

"THE COURT: All of the questions that I asked you before would apply here as well. Have you pleaded guilty to this information after having discussed it to your satisfaction with Mr. Rosenkranz?
"THE DEFENDANT: Yes, sir.

"THE COURT: And you understand that by pleading guilty to this information you are exposed to a much more severe penalty.

"THE DEFENDANT: Yes, sir.

"THE COURT: Do you understand that?

"THE DEFENDANT: Yes sir." [Tran-script, p. 8]

It should be noted that Aviles entered two formal guilty pleas within minutes of each other, the first to the indictment and the second to a second narcotics offender in-formation. His petition seeks relief only from the first of these. While this fact has no ef-fect on the views expressed in this opinion, it bears mentioning because it puts the case in an unusual technical posture.

5. The attorney stated, in response to a ques-tion of the Court, that "[t]he only thing [Aviles] was concerned with . . . was the time he could face in prison and that's what I told him. . . . Maximum, 25 years. . . . That's what he believed he could get." Transcript of Conference of Oc-tober 10, 1975, at 3.

## II

### The Recent Court of Appeals Decisions

In *Michel v. United States*, 507 F.2d 461 (2d Cir. 1974), the court stated that a defendant "not only should be advised that [special parole] will be imposed, but also should be asked by the court if he understands that fact." 507 F.2d at 463. In a later case, *Ferguson v. United States*, 513 F.2d 1011 (2d Cir. 1975), the court held that the rule announced in *Michel* should be applied retroactively. The court rejected the Government's contentions, stressed in its brief, that such an application of the *Michel* rule would bring about the disruption of a number of previous guilty pleas.[6]

## III

### The Present Case Distinguished

What has been said would seem to impel the Court to permit the withdrawal of the plea in this case.

However, the Court is unable to take this step in view of important factual distinctions that can be drawn between the facts underlying the petition presently before the Court and the different factual situations confronted by the Second Circuit in reaching its decisions in the *Michel* and *Ferguson* cases. In *Michel* the denial of the petition was upheld on different grounds and the special parole rule was there announced as dictum. It was later adopted in the *Ferguson* decision. But the sentence imposed in the *Ferguson* case—the number of years in prison added to the number of years of special parole—exceeded the maximum sentence of which the defendant was advised.[7] In addition, Ferguson alleged that he was not aware of the special parole requirement and would not have pleaded guilty if he had been.[8]

In the case presently before the Court, Aviles was told, so far as the sentencing minutes indicate, that he could receive a maximum term of 25 years, while the sentence actually imposed was 12 years in prison and 6 years special parole. In short, the penalty imposed on Aviles, in contrast with the penalty imposed in the *Ferguson* case, was actually less than the maximum of which he was advised. In addition, Aviles has not alleged that he was unaware of special parole or that he would have pleaded differently if he had been informed of it.[9] There is, therefore, no compelling prec-

---

6. In a third case, *Brewington v. United States*, 515 F.2d 504 (2d Cir. 1975), the court adhered without opinion to the *Michel-Ferguson* rule and held in effect that a defendant who had not been directly advised of the mandatory special parole was entitled to withdraw his plea. However, from the record it can be deduced that although a co-defendant was correctly informed of the possible sentence in Brewington's presence, Brewington was not directly advised on the record of *any* statutory penalty prior to his plea. It should be noted that since the *Brewington* decision was rendered from the bench, it carries no precedential value. The Rules of the United States Court of Appeals for the Second Circuit state at Part I § 0.23: "Since these statements [spoken from the bench] do not constitute formal opinions of the court and are unreported and not uniformly available to all parties, they shall not be cited or otherwise used in unrelated cases before this or any other court." *Brewington* is mentioned here only in the interest of thoroughness, and any state-

ments made concerning it are not essential to this Court's decision.

7. Ferguson was sentenced to five years in prison and five years of special parole on one count and, consecutively, to one year in prison and two years of special parole on another, for a total term of supervision of thirteen years. However, he was told that the maximum supervision he could receive was ten years—five years of imprisonment on each of two counts, to be served consecutively. Brief for Legal Aid Society as Amicus Curiae at 2, *Ferguson v. United States*, 513 F.2d 1011 (2d Cir. 1975).

8. Brief for Legal Aid Society as Amicus Curiae at 3–4, *Ferguson, supra*, citing Ferguson's "traverse," document 3 of the record on appeal.

9. The court in *Bye v. United States*, 435 F.2d 177 (2d Cir. 1970), which was relied upon heavily in arriving at the *Michel-Ferguson* automatic reversal rule, took pains to

edent in the Second Circuit to indicate that the rule announced in *Michel* must apply retroactively notwithstanding the fact that the defendant received less than what he was led to believe he might receive as punishment. In first announcing the rule, by way of explication, the court said in *Michel v. United States, supra:*

> . . . Since special parole adds time to a regular sentence, it is within the *Bye* rationale. In *Bye* we said:
>
> > "[T]he unavailability of parole directly affects the length of time an accused will have to serve in prison. . . . It would seem that such a major effect on the length of possible incarceration would have great importance to an accused in considering whether to plead guilty."

435 F.2d at 180. We believe that the special parole here imposed is comparable and that the defendant not only should be advised that it will be imposed, but also should be asked by the court if he understands that fact. 507 F.2d at 463. (Footnote omitted)

In Aviles' plea which is here the subject of controversy, there could have been no "major effect on the length of possible incarceration" since Aviles was told he could possibly receive a substantially longer sentence than the one imposed.

While no Second Circuit case has dealt with the particular factual pattern here involved, at least three [10] other circuits have decided cases squarely on point. The Seventh Circuit held in *Bachner v.*

*United States,* 517 F.2d 589 (1975), that the petitioner should not be allowed to replead when his prison term plus special parole was less than the maximum imprisonment of which he was advised because, on these facts

> [f]ailure to advise a defendant of the mandatory parole term does not inherently result in a complete miscarriage of justice. 517 F.2d at 597.

The Fourth Circuit in *Bell v. United States,* 521 F.2d 713 (1975) held that, while the court should determine that a narcotics defendant understands that his guilty plea subjects him to a special parole term, failure to do so

> is, however, harmless error when the sentence imposed on the defendant and the special parole term do not together exceed the maximum sentence specified at arraignment. 521 F.2d at 714.

This opinion carries the authority of an en banc decision because it was circulated to all members of the court and a majority concurred in it. 521 F.2d at 715 n. 3.

*Bachner* and *Bell* and their underlying theories are discussed below and found to be dispositive of the present case. The one case to the contrary, *United States v. Richardson,* 483 F.2d 516 (8th Cir. 1973) is not followed here because its authority has been weakened by the subsequent Supreme Court decision, *Davis v. United States,* 417 U.S. 333, 94

---

distinguish from its holding a case like the instant case in which the petitioner never alleged that he would not have pleaded guilty if the asserted error had not occurred. Regarding the failure to inform the petitioner that he would be ineligible for parole, the court noted:

> If he would have pleaded guilty even if he were informed that he was ineligible, it is hard to see how his alleged expectation of eligibility prejudiced his decision to plead guilty. 435 F.2d at 179, n. 5.

10. The Third Circuit also may have faced the problem in *Roberts v. United States,* 491 F.2d 1236 (3d Cir. 1974) but the facts are not clear

from the opinion. *Roberts* establishes a rule similar to that in *Ferguson.* The Fifth Circuit, on different facts, recognized the basic distinction involved here in *Eakes v. United States,* 391 F.2d 287, 288 (1968) :

> There is no merit to the contention of the appellant that the judgment should be vacated because the district court misled him as to the sentence which could be imposed, so that his plea of guilty was not made with full understanding of its consequences. Appellant received a lesser sentence than either that which the district court informed appellant it could impose or the maximum sentence provided by law.

S.Ct. 2298, 41 L.Ed.2d 109 (1974), discussed below.

## IV

### The Standard for Plea Vacatur Under Fed.R.Crim.P. 11

Rule 11 of the Federal Rules of Criminal Procedure, as it stood at the time the plea in question was taken, contained the following language:

> The court may refuse to accept a plea of guilty, and shall not accept such plea . . . without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea.

The Supreme Court construed Rule 11 in *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) in a manner it hoped would eliminate the need to resort to later fact-finding proceedings. The Court held

> that a defendant is entitled to plead anew if a United States district court accepts his guilty plea without fully adhering to the procedure provided for in Rule 11. 394 U.S. at 463–64, 89 S.Ct. at 1169.

The Court further said that

> [t]here is no adequate substitute for demonstrating *in the record at the time the plea is entered* the defendant's understanding of the nature of the charge against him. 394 U.S. at 470, 89 S.Ct. at 1173 (emphasis in original).

While this language is relatively clear, difficulty arises in handling matters that are not clearly within "the procedure provided for in Rule 11." [11] Several circuits have developed methods for handling such matters that avoid the automatic reversal rule of *McCarthy*.

In *United States v. Blair*, 470 F.2d 331 (5th Cir. 1972), the court avoided any hard and fast rule with respect to informing a defendant of the consequences of a guilty plea and drew a distinction between a total failure to inform an error in informing. The court stated that where there is an error in informing the defendant of the consequences of a plea

> so long as the consequences which actually resulted from the plea were not more dire than the defendant had been led to believe they could be, the record allows an evaluation of whether or not the misinformation induced a plea which would not have been entered had the defendant known the actual maximum penalty. 470 F.2d 331, 340 n. 20.

The court there relied upon its own en banc decision in *United States v. Woodall*, 438 F.2d 1317, 1322 (5th Cir.), *cert. denied*, 403 U.S. 933, 91 S.Ct. 2262, 29 L.Ed.2d 712 (1971), which established the rule of "case by case evaluation to determine whether the prospect of different punishment would have caused a change in the plea," and noted Judge Thornberry's explanation in a special concurrence in *Barton v. United States*, 458 F.2d 537, 543 (5th Cir. 1972), that the *Woodall* court avoided the automatic vacatur rule with a "weighing operation" whereby "[e]ach individual case must be determined on its own facts, based on whether under all the circumstances the incorrect sentencing information had an effect *at the time of the plea* on the defendant's decision to plead guilty." 458 F.2d at 543 (emphasis in original). *See also, Johnson v. Wainwright*, 456 F.2d 1200 (5th Cir. 1972).

The Seventh Circuit relies on *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) in finding that the automatic reversal rule of *McCarthy*, which was a direct appeal, is inapplicable to collateral attack petitions. The Supreme Court said in *Davis*:

---

11. As stated earlier, at the time the present plea was accepted there was no Second Circuit case requiring that the court directly notify the defendant of special parole.

This is not to say, however, that every asserted error of law can be raised on a § 2255 motion. In *Hill v. United States*, 368 U.S. 424, 429 [82 S.Ct. 468, 472, 7 L.Ed.2d 417] (1962), for example, we held that "collateral relief is not available when all that is shown is a failure to comply with the formal requirements" of a rule of criminal procedure in the absence of any indication that the defendant was prejudiced by the asserted technical error. We suggested that the appropriate inquiry was whether the claimed error of law was "a fundamental defect which inherently results in a complete miscarriage of justice," and whether "[i]t . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent." 417 U.S. at 346, 94 S.Ct. at 2305.

The Seventh Circuit first announced this view in *Gates v. United States*, 515 F.2d 73 (1975) and elaborated on it in *Bachner, supra*. Bachner was told that he could receive as much as 15 years in prison and was not advised by the court of special parole. He received a ten year sentence, later corrected to seven years in prison and three years mandatory special parole. In finding that Bachner was not prejudiced, the court stated:

> Bachner argues that under the statute he might have received either a sentence of fifteen years imprisonment plus a parol term, or a parole term far in excess of the mandatory of three years, with the result that the total of the term of his sentence and the term of his parole might have far exceeded the fifteen years he was advised was the maximum sentence he could receive. The remote and theoretical possibility that a complete miscarriage of justice might have occurred is not enough to satisfy the *Davis* test, when in fact no injustice has been done. 517 F.2d at 597.

## V

*The Application by the Fourth Circuit of the Doctrine of Harmless Error to the Factual Pattern of This Case is Valid and Persuasive.*

The doctrine of harmless error was developed, largely by statute, to avoid automatic reversals for trial court errors revealed by hypercritical reading of transcripts.[12] The Supreme Court has recognized that harmless errors in the admission or exclusion of evidence should not result in the automatic reversal of trial results. *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), cited in *Rothschild v. New York*, 525 F.2d 686 (2d Cir. 1975) and *United States ex rel. Hines v. LaVallee*, 521 F.2d 1109 (2d Cir. 1975).

While *Harrington* and *Chapman* require that error be harmless beyond a reasonable doubt before it can be disregarded, they deal with federal constitutional error. Here we are dealing only with the requirements of technical procedural rules as construed by the Supreme Court "solely . . . pursuant to our supervisory power over the lower federal courts . . . ." *McCarthy v. United States*, 394 U.S. 459, 464, 89 S.Ct. 1166, 1169, 22 L.Ed.2d 418 (1969). The standard for judging such error could hardly be as stringent as that for constitutional error. The Second Circuit has adopted a relaxed standard for denying a new trial due to the Government's nondisclosure of additional impeaching evidence. The court will order a new trial only where there is a "significant chance" that the added disclosure would have induced a reasonable doubt in the minds of the jurors.[13] *United States v. Rosner*, 516 F.2d 269, 272 (2d Cir. 1975); *United States v. Bonanno*, 430 F.2d 1060, 1063–64 (2d Cir.), *cert. denied*, 400 U.S. 964, 91 S.Ct. 366, 27

---

12. *See Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); R. Traynor, The Riddle of Harmless Error 1–14 (1970).

13. Chief Judge Traynor has suggested that convictions should not be reversed where there is a "high probability" that the error did not affect the result. R. Traynor, *supra* note 12, at 35–37, 44–51, 80–81 (1970).

L.Ed.2d 384 (1970); *United States v. Miller,* 411 F.2d 825, 832 (2d Cir. 1969). Rule 52(a) of the Federal Rules of Criminal Procedure provides:

> Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

Judge Judd, writing for the Eastern District of New York, applied the harmless error doctrine to a case similar to that *sub judice* in a very able opinion in *Poerio v. United States,* 405 F.Supp. 1258 (1975). Poerio stood before the bench during the pleading by his co-defendant, admitted hearing what was said to the co-defendant and was himself advised of all possible punishment except special parole. Judge Judd found it unnecessary to determine the precise standard for harmless error in a plea proceeding since he found beyond a reasonable doubt that the plea had been voluntary and made with knowledge that a special parole term was mandatory.

Similar considerations led the Fourth Circuit to its result in *Bell v. United States, supra.* Bell was told that the maximum punishment he could receive was 15 years in prison. He was sentenced to six years in prison and three years special parole. While agreeing that invalidation of the plea is required when the sentence and the special parole term exceed the maximum sentence a

petitioner was told he could receive, the court expressly found this to be harmless error and added that

> when, as here, the combination is less than the maximum of which the prisoner had been advised, we perceive no warrant to conclude that he was misled. 521 F.2d at 715.

### VI

*The Alleged Error, Far From Warranting An Invalidation of the Plea as a Substantial Miscarriage of Justice, Should Be Disregarded as Harmless Procedural Error.*

Either of the above theories, whether that of the Fourth or that of the Seventh Circuit, is dispositive of the instant case. Under the Seventh Circuit's analysis, the nonconstitutional omission, though in retrospect an error, is not a fundamental defect and did not result in a complete miscarriage of justice. The harmless error approach of the Fourth Circuit is equally dispositive on several grounds. First, Aviles alleges neither that he was misled to his prejudice nor that mention of special parole would have changed his plea. Second, as the Fourth Circuit concluded in *Bell,* since he received a shorter period of federal supervision than he was advised of, he can claim no harm.[14] There is simply no

14. The Court is well aware that the Second Circuit has, in considering a different issue, rejected the claim that there is no harm if the punishment given is less severe than that advised of. *Bye v. United States,* 435 F.2d 177, 180 (2d Cir. 1970). But the reasoning there is inapposite to the present facts.

In *Bye,* the defendant was not told that he would be ineligible for parole should he plead guilty. The court concluded:

> The government's argument that Bye was not prejudiced since his actual mandatory incarceration under his sentence falls within the perceived range of mandatory incarceration periods had parole been available, misconceives the nature of the danger of an accused pleading guilty while unaware of his ineligibility for parole. The danger is that the accused makes his decision to plead guilty underestimating by a factor of three the

risk of prolonged mandatory incarceration. 435 F.2d at 180.

The special parole term entails no such automatic lengthening of the period of incarceration, and its effect on the defendant, if any, is dependent on his future behavior which is, at the time of the plea, at best speculative and subjective and as such cannot be given the significance of a lengthening of a mandatory period of incarceration. The Seventh Circuit, in *Bachner, supra,* explained it in this manner:

> Unlike ineligibility for parole, which "automatically trebles the *mandatory* period of incarceration which an accused would receive under normal circumstances," *United States v. Smith, supra,* 440 F.2d [521] at 525 (emphasis in original), the mandatory parole term has no effect on that period of incarceration and does not ever become ma-

"significant chance" that he was misled to his prejudice. He was well aware that as a second offender he was exposed to an extended prison term since the court stressed this to him before accepting his plea (see note 4 above), yet the total term of supervision to which he was sentenced was far shorter than that of which he was advised. Aviles' unsuccessful § 2255 petition on other grounds and the two years and three months between Aviles' sentencing and filing of this petition stand as some evidence of the fact that neither he nor his counsel was surprised by the imposition of a special parole term or initially thought of the absence of any special parole reference as a possible infirmity to his sentence. Finally, in the words of Fed. R.Crim.P. 52(a), while the imposition of a special parole term surely involves a defendant's substantial rights, a less-than-advised term does not adversely affect these rights.

The sterile attack mounted by Aviles deserves further comment. He has grounded this petition solely on the non-utterance of the words "special parole." Both he and his attorney have removed from this case any significance that might attach to their states of mind at the time of the plea. Neither he nor his experienced attorney, who represented him at his plea, at his sentencing, and on this petition, has claimed that they were misled or surprised to their prejudice. The attorney specifically declined an opportunity to present any such evidence. This petition was inspired solely by the language in *Michel* and *Ferguson*. What Aviles is saying, in effect, is that since the ritualistic utterance of the words "special parole" did not occur that he should stand free to deal with this old indictment as he pleases, and he claims that whether or not the mention

terial unless the defendant violates the conditions of his parole. It would be as unrealistic, we think, to assume that he would expect to do so and be influenced by that expectation at the time he is considering whether to plead guilty, as it would

of special parole would have changed his plea is totally irrelevant.

This poses squarely the issue of formalistic adherence to ritualistic words in plea procedures. It lends significant support to the application of the doctrine of harmless error to this case. And, very importantly, it adds a second major distinction between this case and the recent Second Circuit decisions since, in *Michel*, the petitioner affirmed that he did not understand the term special parole and his attorney affirmed that he did not discuss it with him, 507 F.2d at 463, 464, and, in *Ferguson*, the petitioner alleged that he was not aware of the mandatory special parole and would not have pleaded guilty if he had been (see note 7 above).

### VII

#### *Conclusion*

The petitioner pleaded guilty in the full knowledge that as a dangerous second offender he was exposed to a prison term of up to 25 years. In fact, he received the much less onerous sentence of 12 years imprisonment and 6 years special parole. Although petitioner was not directly advised of the statutory requirement for a term of special parole at the time of his plea, he did not suffer a "complete miscarriage of justice," because he received a sentence which, combining the terms of imprisonment and special parole, was 7 years less than the maximum prison term to which he knew he was exposed. Since petitioner in fact suffered no actual prejudice, the failure to inform him of special parole on the record was harmless error, and to vacate his guilty plea and sentence because of the nonutterance of special parole would be to elevate form over substance.

be to assume that he would be influenced by other contingencies he is not advised about [such as the intricate workings of "earned good time" and federal parole eligibility procedures]. 517 F.2d at 597.

It seems to this Court that the automatic invalidation of the plea in this case would set at liberty a serious violator of the narcotics laws who has had long experience with the criminal law,[15] and who now seeks to abort his prosecution by invoking the retroactive application of the rule in *Michel* to the facts of his case without a showing of prejudice. It is unlikely that this defendant can now be successfully prosecuted. The passage of time has eroded and scattered the evidence against him. His serious factual admissions at the time he pleaded guilty would no longer stand as admissions against interest. To permit him to plead "not guilty" would open the jail doors for him. Such a result would inflict a serious recidivist upon the law-abiding community.

Perhaps most importantly, the Second Circuit has nowhere held that, where the combined sentence of imprisonment and special parole is less than the maximum of which a defendant was warned, the plea and sentence must be set aside. Indeed the contrary was clearly implied in *Michel,* and was so held by the Fourth and Seventh Circuits. This Court holds that the *Michel-Ferguson* duet does not compel a retroactive application of the *Michel-Ferguson* language to the factual situation here and refuses to extend that language to cover the present case.

Petition denied. It is so ordered.

### APPENDIX A (Page 1)

## ACKNOWLEDGMENT OF ADVICE AS TO CONSTITUTIONAL RIGHTS WITH RESPECT TO GUILTY PLEA

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

– – – – – – – – – – – – – – – – – – – – x

UNITED STATES OF AMERICA,    :

    -against-    :    _____ CR. _____

        :

    Defendant,    :

– – – – – – – – – – – – – – – – – – – – x

I have received and read a copy of the Indictment Information * and understand the nature of the charges made against me. I have told my attorney all I know about the matters referred to in it.

My attorney has explained to me the nature of the charges against me, my constitutional rights, and the punishment that could be imposed by the court upon my plea of guilty.

I understand that *if I plead not guilty* to any count or counts in the Indictment or Information:

(a) I will be presumed under the law to be innocent of the charges against me in such count or counts;

(b) I will be entitled to a speedy, public trial by an impartial jury in which the burden will be upon the Government to establish my guilt beyond a reasonable doubt to the satisfaction of all 12 jurors;

(c) Upon such trial (i) I will be entitled to remain silent and no inference may be drawn against me because of my silence; (ii) I may, if I wish, testify on my own behalf; (iii) I will

15. See Appendix B attached.

* Cross out the inapplicable word.

be entitled to confront and cross-examine all witnesses against me; and (IV) I will be entitled to compulsory process of the court to obtain witnesses to testify and evidence to be offered in my defense.

I understand that *if my plea of guilty to any count or counts is accepted* by the court, I give up the foregoing rights with respect to such count or counts and the court will have the same power to sentence me as if a jury had brought in a verdict of guilty with respect to such count or counts.

My decision to plead guilty is freely and voluntarily made. I have not been induced to plead guilty to any count by any promises or by any statement that I would receive leniency, a lesser sentence, or any other consideration if I pleaded guilty instead of going to trial. I have not been induced to plead guilty by any threats, force, coercion, pressure or fear.

I am pleading guilty because, after discussing the case with my attorney, I believe that I am guilty.

My attorney has advised me that he does not believe that there are any meritorious defenses to the count or counts to which I am pleading guilty and that after discussing the facts with me he does not believe that any of my constitutional rights have been violated in connection with any interrogation of me or any statement or confession made by me, or in connection with my property, arrest or these proceedings.

I am not under the influence of any substance, such as narcotics, drugs, pills, medicine or alcohol, that would affect my ability to understand the nature and consequences of my action in pleading guilty.

_____
Signature of Defendant

Dated:

I, the attorney for the above-named defendant, have reviewed the foregoing with him, have explained to him the nature of the charges against him, his constitutional rights, and the punishment that could be imposed upon his guilty plea. I have also advised him that in my opinion he does not have any meritorious defense to the count or counts to which he is pleading guilty and that his constitutional rights have not been violated.

_____
Signature of Attorney

Dated:

## APPENDIX B
### EXTRACT FROM PRESENTENCE REPORT ON JAIME AVILES

PRIOR CRIMINAL RECORD:

NYCPD    297697

| DATE | PLACE | CHARGE | DISPOSITION |
|---|---|---|---|
| 3/12/51 | NY, NY (Gen. Sess. Ct.) | Fel. Asslt. (knife) | 6/20/52, D.O.R. |
| 2/20/55 | NY, NY (Magis. Ct.) | Disord. Cond. | 2/25/55, S.S. |
| 10/ 3/57 | NY, NY (Spec. Sess. Ct.) | Poss. of Policy Slips | 10/3/57—S.S. |
| 10/16/57 | NY, NY (Gen. Sess. Ct.) | Poss. and Att. Sale of Heroin | 5/22/59—1½ to 3 yrs., state prison—this sentence covers arrests of 11/13/57 and 4/22/58; paroled to warrant, arrest of 5/18/59 on 7/17/61; max. exp., 4/7/62. |

## EXTRACT FROM PRESENTENCE REPORT ON JAIME AVILES

PRIOR CRIMINAL RECORD:

NYCPD     297697

| DATE | PLACE | CHARGE | DISPOSITION |
|------|-------|--------|-------------|
| 3/18/58 | NY, NY (Magis. Ct.) | Unlic. Operator of Motor Vehicle | $100 or 10 days, NYC Work House |
| 11/13/57 | NY, NY (Gen. Sess. Ct.) | Sale of Heroin | See disp. under date, 10/16/57. |
| 3/22/58 | Bronx, NY (Spec. Sess. Ct.) | Fel. Asslt. | 1/8/60—60 days Work House |
| 4/22/58 | NY, NY (Gen. Sess. Ct.) | Sale of Heroin | See disp. under date, 10/16/57 |
| 12/12/58 | NY, NY (Spec. Sess. Ct.) | Policy | 6/12/59, 30 days, S.S. |
| 2/26/59 | NY, NY (Spec. Sess. Ct.) | Asslt., 3rd deg. reduced to Disord. Cond. | 9/6/61, 60 days |
| 1/23/62 | NY, NY (SDNY) | Sale of Narc. | 8/16/62, 4 years Mandatorily released, 6/18/65; supervision terminated 2/10/66 |
| 12/15/70 | NY, NY | Crim. Poss. of Dang. Drug | 2/16/70, dism. |
| 6/15/72 | NY, NY (SDNY) | Viol. Fed. Narc. Laws | Instant case |