**UNITED STATES of America, Appellee,**

**v.**

**Michael JOURNET, Defendant-Appellant.**

**No. 300, Docket 76–1285.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 8, 1976.

Decided Nov. 1, 1976.

David Gottlieb, New York City (William J. Gallagher, Jonathan J. Silbermann, The

Legal Aid Society, Federal Defender Services Unit, New York City, of counsel), for defendant-appellant.

Edward R. Korman, Chief Asst. U. S. Atty., Brooklyn, N.Y. (David G. Trager, U. S. Atty., E.D.N.Y., Brooklyn, N.Y., of counsel), for appellee.

Before KAUFMAN, Chief Judge, MANSFIELD and MESKILL, Circuit Judges.

MANSFIELD, Circuit Judge:

This appeal raises a question of importance to district judges accepting guilty pleas, i. e., whether a guilty plea must be invalidated where the district judge, in ascertaining whether such a plea is voluntarily and intelligently made, advises the defendant of most of the constitutional rights referred to in the recently amended version of Rule 11(c), F.R.Cr.P.,[1] effective December 1, 1975, but fails explicitly to inform him of certain other constitutional rights and other matters enumerated in that Rule. We hold that unless the defendant is specifically informed of each and every element enumerated in Rule 11 the plea must be vacated.

On April 5, 1976, appellant Michael Journet, who was charged in Count One of an indictment filed against him in the Eastern District of New York with conspiracy to distribute narcotics and in Count Two with the distribution of narcotics in violation of 21 U.S.C. § 841(a)(1), offered through his Legal Aid counsel, to withdraw his plea of not guilty to Count Two and to plead guilty to that count. Thereupon Judge Mark A. Costantino, after explaining that Count Two charged appellant with a felony, obtained from him in open court an express waiver of his right to a jury trial, of his rights to confront witnesses against him and to have his attorney cross-examine them, and of his right "under the law as to the presumption of innocence." The judge then secured from the defendant an assurance that the plea was entered voluntarily and not as the result of any promises or duress and a statement from the defendant that he had given a half-ounce of cocaine to one Johnny Mustache, knowing this to be unlawful, which established a factual basis for the guilty plea. Finally the court advised the defendant that upon his guilty plea he could be sentenced to a maximum penalty of "fifteen . . . years and/or $25,000 fine, with a minimum of three years special parole term . . . if you receive a jail sentence." The guilty plea was thereupon accepted.

On June 4, 1976, appellant was sentenced by Judge Costantino to an eight-year prison term to be followed by a special parole term of seven years. From this judgment Journet appeals, claiming that the guilty plea was invalid because the judge, before accepting it, failed explicitly to inform him of the following rights and matters enumerated in new Rule 11, effective on December 1, 1975: (1) his right not to be compelled to incriminate himself; (2) that if he pleaded guilty there would be no further trial of any kind; (3) that his answers in response

---

1. Rule 11(c) provides:

"(c) *Advice to Defendant.* Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

(1) *the nature of the charge to which the* plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and

(2) if the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if necessary, one will be appointed to represent him; and

(3) that he has the right to plead not guilty or to persist in that plea if it has already been

made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

(4) that if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial; and

(5) that if he pleads guilty or nolo contendere, the court may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement."

to the court's questions about the offense could be used against him in a prosecution for perjury or the making of false statements; and (4) that the maximum sentence could include, in addition to 15 years imprisonment, a life-time parole.

The government, relying upon our recent decision in *Kloner v. United States,* 535 F.2d 730 (2d Cir. 1976), argues that when viewed substantively and in the light of all the surrounding circumstances the record reveals that the guilty plea was a voluntary and knowing one, and that since the court's failure to comply with some of the detailed requirements of Rule 11 did not deprive the defendant of any substantial rights, the guilty plea should stand.

## DISCUSSION

■ In *Kloner v. United States, supra,* we summarized the general principles governing compliance with Rule 11 as it stood prior to the amended version which went into effect December 1, 1975:

" 'Since a guilty plea is the equivalent of a conviction and involves the defendant's waiver of precious constitutional rights,' *Saddler v. United States,* 531 F.2d 83 (2d Cir. 1976), *citing Kercheval v. United States,* 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009, 1012 (1927); see also *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the Supreme Court has emphasized that there must be strict adherence to its requirements in the acceptance of a guilty plea. Accordingly, in *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), exercising its supervisory power over the federal courts, the Court determined that the sanction for non-compliance would thereafter be to set aside the plea and to offer the defendant the opportunity to plead anew to the charge."
*Kloner v. United States,* 535 F.2d at 733.

In that case we held that the language of the old rule, which was general in nature, did not necessarily require the court to enumerate each and every right waived by the pleader as long as the record, viewed in the totality of the surrounding circumstances, demonstrated that the defendant was "sufficiently aware of the consequences of and alternatives to his guilty plea to render his plea a voluntary and intelligent one." However, we warned that our holding "should not be construed as an endorsement of the procedure followed by the district court in this case," and strongly urged that the district court adopt a set of instructions outlining the specific rights to be waived in each case as a means of insuring compliance with the rule.

It now appears that Congress, by its recent amendment of Rule 11, has decided to mandate just such a course in lieu of requiring appellate courts to interpret the old rule's general guidelines on a case-by-case basis. Subsection (c) of the new Rule 11 provides that before accepting a guilty plea the court "must" personally inform the defendant in open court of specifically enumerated rights and other matters pertaining to the question of whether the plea is a voluntary and knowing one. It is difficult to conceive of clearer language.

That Congress' purpose was to codify the advice required to be given by *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), is further evidenced by the legislative history of the amendment. The Advisory Committee Notes state that subsection (c), "prescribes the advice which the court *must* give to the defendant as a prerequisite to the acceptance of a plea . . . . The amendment identifies more specifically what *must* be explained to the defendant." (Emphasis added). The Congressional Conference Committee also emphasized that this subsection, "enumerates certain things that a judge *must* tell a defendant before the judge can accept the defendant's plea." House Conf.Rep. No. 94–414, 94th Cong., 1st Sess. 9 (1975) (emphasis added). Congress' intent is further evidenced by its refusal to accept a more general version of Rule 11(c)(3) proposed by the Advisory Committee on Rules of Criminal Procedure,[2] which had suggested that

2. The Advisory Committee had proposed that subsection (c)(3) read as follows:

"(c) *Advice to defendant.* The court shall not accept a plea of guilty or nolo contendere

the district court "*may* want to explain some of the aspects of trial such as the right to confront witnesses, to subpoena witnesses, to testify in his own behalf, or, if he chooses, not to testify" (emphasis added) but that the scope of the due process warning "required, in this respect, to conform to *Boykin* is left to future case-law development," 62 F.R.D. at 280. This suggested permissive approach was rejected in favor of a mandatory one.

Congress thus adopted a standard, practical solution to the problems that had been frequently encountered by Courts of Appeals in determining whether there has been compliance by the district courts with the old formulation of the rule. Now a specific procedure is mandated rather than suggested. As the government concedes in its brief in this case, "compliance with F.R. Cr.P. Rule 11 should be relatively easy for any careful district judge." Appellee's Brief at 10.

In reviewing a district court's compliance with Rule 11, we can no longer accept as sufficient general statements or inquiries by the district judge on the theory that when construed in the light of surrounding circumstances they meet the rule's requirements. We now hold that, as a minimum, before accepting a guilty plea each district judge must personally inform the defendant of each and every right and other matter set out in Rule 11. Otherwise the plea must be treated as a nullity.

 The government's contention that Rule 52(a), F.R.Cr.P.,[3] which permits us to disregard harmless error, mandates affirmance of appellant's guilty plea must be re-

jected. Since a guilty plea amounts to a conviction which may have most serious consequences for the accused—in this case eight years of imprisonment followed by seven years of parole—the acceptance of the plea cannot be dealt with in a hasty or cavalier fashion. Fundamental constitutional rights are at stake, the loss of which could hardly be classified as insubstantial or harmless. What is required is "the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence," *Boykin v. Alabama,* 395 U.S. at 243–44, 89 S.Ct. at 1712. To permit Rule 52(a) to be used as a means of by-passing the specific and detailed procedure prescribed by Rule 11 would be to frustrate and defeat Congress' expressed intention. Although the present appellant may have been more disenchanted by the heavy sentence imposed upon him rather than by the court's failure to adhere to Rule 11, Congress' purpose of insuring compliance with *Boykin* provides the governing principle.

 Applying these principles, appellant's guilty plea must be vacated because of the district court's failure to comply with Rule 11(c). The district judge failed to warn appellant that the "maximum possible penalty" included a possible life-time parole,[4] that if he should go to trial upon his not guilty plea he would have the right to assistance of counsel at the trial, that his guilty plea would waive his right against self-incrimination, that if his guilty plea was accepted no further trial of any kind would be held,[5] and that if he should decide

---

without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

\* \* \* \* \* \*

"(3) that the defendant has the right to plead not guilty, or to persist in that plea if it has already been made; . . . ."

**3.** Rule 52(a) provides that, "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

**4.** The word "life-time" need not be used by the judge in delineating the maximum permissible

parole term provided he clearly explains to the defendant the extent of the term which the court is authorized to impose.

**5.** The reason for this requirement was explained by the Advisory Committee:

"Specifying that there will be no future trial of any kind makes this fact clear to those defendants who, though knowing they have waived trial by jury, are under the mistaken impression that some kind of trial will follow." 62 F.R.D. 271 at 280.

to plead guilty the court would have the right to ask him questions under oath about the offense, in which event, if he should give untrue answers, his statements under oath could be used against him in a prosecution for perjury.[6] Appellant was clearly entitled under Rule 11(c)(1), (2), (3), (4) and (5) to be advised of these matters·before pleading guilty.

In view of these deficiencies in the acceptance of the plea, we need not examine appellant's other claims. The judgment is reversed with directions to vacate the guilty plea.

---

**6.** We recognize that, unlike the practice in some other circuits, the district courts in this circuit do not follow the custom of placing the defendant under oath before questioning him in connection with the acceptance of his guilty plea. However, since the court has the right to do so and Rule 11(c) (5) is phrased in mandatory terms, it is advisable to give the warning to the defendant.