UNITED STATES of America

v.

Gilbert Andrew FRIEDMAN, a/k/a "Chris", Defendant.

No. 76 Cr. 441.

United States District Court, S. D. New York.

May 19, 1977.

Robert B. Fiske, Jr., U. S. Atty., S.D. N.Y., New York City, for the Government; by Rhea K. Neugarten, Harry C. Batchelder, Jr., New York City, Asst. U. S. Attys., of counsel.

Finger, Goldberg, Zinner & Finger, Kew Gardens, for defendant; by William L. Finger, Stephen David Fink, Kew Gardens, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

On July 27, 1976, Gilbert Andrew Friedman withdrew his plea of not guilty and entered a plea of guilty to one count of conspiracy to possess with intent to distribute certain schedule 3 narcotic substances. The defendant was represented by private counsel. On September 17, 1976, after exercising his right of allocution, he was remanded by this Court to the custody of the Attorney General for a period not to exceed three years to be followed by a special parole term of three years. Thereafter his original counsel was discharged and new counsel was retained. On October 29, 1976, the new counsel moved under Rule 35, Fed. R.Crim.P., to reduce the sentences. Accompanying the motion were letters of support from friends and associates of Mr. Friedman. I denied the motion on December 16, 1976.

Following the denial, second counsel was discharged and third counsel was retained. A motion has now been made to permit the withdrawal of the plea of guilty pursuant to Rule 32(d) of the Fed.R.Crim.P. on the grounds that the plea was constitutionally defective, defendant was ineffectively assisted by counsel, and errors were present in the presentence report.

### I.

It seems a futile exercise to quote from the plea minutes at length. They speak for themselves. I note that Friedman through

his attorney waived a reading of the indictment, and that Friedman was informed that he had a right to a public trial before a judge or judge and jury; that at such a trial he had the right to confront witnesses and cross-examine them; that he would be presumed innocent until proven guilty; and that he would be entitled to call his own witnesses and, if necessary, the Court would issue orders to have such witnesses produced. At four separate junctures, Friedman expressly acknowledged that he understood these rights.

I then asked the defendant if he understood that the indictment charged him with distributing or possession with intent to distribute valium and amphetamines. Friedman expressed his awareness of the charge by stating that as far as he knew, only valium was involved in the conspiracy. When asked whether he did in fact possess the valium, he answered in the affirmative.

Friedman further indicated that no threats or promises had been made to induce him to plead guilty and that no one made any predictions as to the sentence that might be imposed. He indicated that he was not under the present influence of any narcotic drug or alcohol and that he was not then under the present care of a psychiatrist or physician.

Defendant's initial argument is that he did not "understand . . . the essential elements of the crime charged." *McCarthy v. United States,* 394 U.S. 459, 471, 89 S.Ct. 1166, 1173, 22 L.Ed.2d 418 (1969). However, when I asked Friedman whether he wished the first count read to him, his private counsel responded, "Your Honor, we waive the reading. It has been explained to him." The record also indicates that Friedman heard the plea allocution of his co-defendant, Alan Gassberg.

I explained to Friedman the count to which he was pleading in the following manner:

"Q. The first count of this indictment basically charges you with conspiring with your co-defendant and possibly with others to possess with intent to distribute, and/or to distribute, certain schedule 3 narcotic drugs basically valium and amphetamines.

Do you understand that, sir?

"A. Excuse me, your Honor?

MR. PASSIN: Your Honor, my client explains to me there were no amphetamines at all.

THE COURT: As far as he was concerned, but as part of the conspiracy.

"Q. Do you agree it was part of the conspiracy?

"A. There was no amphetamines, your Honor, not to my knowledge.

"Q. But did you know about the valium?

"A. Yes, sir.

MR. PASSIN: Yes."

Thus, Friedman was informed of and understood the criminal object of the conspiracy and that the participation of more than one person was required. The follow-up question pointed out the distinction between his personal involvement with amphetamines and involvement by other members of the conspiracy. Although the plea minutes alone satisfy me that Friedman understood the charge, *Irizarry v. United States,* 508 F.2d 960, 964 (2d Cir. 1974), other factors reinforce this opinion. Friedman, at age 29, is a knowledgeable businessman with some college training; he has served as assistant comptroller of a large well known corporation, and chief accountant for a smaller one. After leaving these positions, Friedman purchased and operated a licensed medical and dental center in Spanish Harlem and leased and operated a second clinic.

■ Friedman's degree of sophistication, coupled with the inquiry conducted on the record, lead me to reject his claim of lack of understanding of the nature of the proceedings and of the charges.

Counsel next complains that Friedman was incorrectly informed at the time of plea that a special parole term of two years could be imposed when, in fact, a three year special parole term is required. The simple answer to this argument is that defense counsel erroneously states the proper sen-

tence. For first offenders, a maximum sentence of five years and/or $15,000 and a minimum special parole term of two years is provided, 21 U.S.C. § 841(b)(1)(B).

Although not directly raised in the moving papers, I note that Friedman was never informed that the special parole term of two years is the required minimum if a period of incarceration is imposed. While the word "minimum" was not used, I did inform Friedman that he "could go to jail for five years and pay a $10,000 fine and two years special parole."

■ When the crime charged so dictates, a district court must determine whether a defendant who seeks to enter a guilty plea understands that he may be subject to a mandatory minimum special parole term. To my knowledge, the Court of Appeals for this Circuit has applied this standard in but a few instances. In *Michel v. United States*, 507 F.2d 461 (2d Cir. 1974), which enunciated the rule, the court reviewed the plea minutes and concluded that the district court had properly advised the defendant concerning special parole. Thereafter, in *Ferguson v. United States*, 513 F.2d 1011 (2d Cir. 1975) a vacatur of a guilty plea was ordered where no mention whatsoever was made of a special parole term. A third case, *Aviles v. United States*, 405 F.Supp. 1374 (S.D.N.Y.1975), aff'd 538 F.2d 307 (2d Cir. 1976), although not binding precedent,* is of analytical importance. Notwithstanding the omission of any reference to special parole in the course of the plea inquiry, the motion to vacate was denied. Two basic reasons supported this conclusion: first, the defendant executed an advise of rights form indicating that his attorney had advised him of all consequences of the plea, 405 F.Supp. 1375–76, and second, relying in part on a Fourth Circuit case, the district court ruled that since the term of imprisonment imposed, plus the special parole term, did not exceed the total of the maximum jail term plus the minimum parole term, the

error was harmless, 405 F.Supp. at 1378–83 citing *Bell v. United States*, 521 F.2d 713, 714 (4th Cir.), cert. denied, 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976).

■ The Friedman plea survives scrutiny under both standards espoused in *Aviles*. Privately retained counsel who represented the defendant at the time of plea has submitted an affirmation to this Court in which he indicates that Friedman was a friend and client, that the plea of guilty was offered after consultation, and that Friedman "knew the full extent and consequences of his plea of guilty." Friedman has submitted no affidavit denying his understanding of the special parole term or any other consequence of his plea. Considering the attorney's statement, Friedman's level of sophistication and the absence of a denial of understanding, I conclude that when Friedman was informed on the record of the possible "two year special parole" he understood the full meaning of that reference.

Tangentially, I note that under the *Bell* harmless error test, the sum of the jail term imposed, three years, and the special parole term, three years, is less than the sum of the maximum jail term, five years, and the minimum special parole term, two years.

Defense counsel has neither briefed nor argued the procedural application of *United States v. Journet*, 544 F.2d 633 (2d Cir. 1976), to this plea inquiry. However, the government's answering papers assert that *Journet*, even if raised, would not control. *Journet*, which was decided four months prior to the taking of this plea, is novel and important in at least two respects: it requires first, that a defendant be advised that the "maximum possible penalty" includes possible life-time parole, 544 F.2d at 636 and second, that "unless the defendant is specifically informed of each and every element enunciated in Rule 11 the plea

---

* The Federal Reporter lists the case as a decision without a published opinion. A footnote to the listing of the affirmance reads as follows:

"Oral opinion delivered in open court in the belief that no jurisprudential purpose would be served by a written opinion. An oral opinion or a summary order is not citable as precedent. Local Rule § 0.23."

must be vacated." 544 F.2d at 634. Thus, the Court departed from its prior ruling that "[a] guilty plea will not be invalidated simply because of the district court's failure, during its Rule 11 inquiry, to enunciate one or more of the rights waived by the defendant." *Kloner v. United States*, 535 F.2d 730, 733 (2d Cir. 1976).

Judge Pierce recently considered the retroactive application of *Journet* and concluded that under the standards set forth in *Halliday v. United States*, 394 U.S. 831, 832, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), for determining retroactivity of appellate interpretations of Rule 11, *Journet* should not be applied to previously accepted guilty pleas:

> "The purpose and effect of *Journet* has been to mandate a specific procedure for the taking of guilty pleas in the future; reliance on the 'totality of the circumstances' approach was widespread, and it is abundantly clear that a retroactive application of *Journet*'s 'each and every' standard would mandate the vacating of scores of guilty pleas entered in this court, many of which have been followed by the imposition of a prison sentence, and thus would have a substantial impact upon the administration of justice."

*United States v. Saft*, 76 Cr. 414 (Feb. 17, 1977).

■ I agree with the reasoning of Judge Pierce. The purposes of the *Journet* rule are to require strict adherence with Rule 11, to insure that a proper record is made of the defendant's understanding of his rights, and, lastly, to insure that the defendant is aware that lifetime parole is a possible consequence of his plea. Yet the prior case law, which indicated that voluntariness should be viewed from all the circumstances, controlled not only motions to vacate but also the manner in which plea inquiries were conducted. In addition, the *Journet* requirement that under Rule 11(c)(1) the defendant must be informed of the maximum possible parole term is a substantial departure from past practices and possibly more generous than Rule 11(c)(1) requires. *See* 1974 Amendment, Notes on Advisory Committee on Rules. Thus, there has been substantial reliance upon pre-*Journet* law. Finally, as Judge Pierce noted, to give retroactive effect may be to void countless convictions in this district. Unlike the *Michel* decision which was given retroactive effect in *Ferguson*, *Journet* is not isolated to one facet of the plea inquiry; the breadth of *Journet* is itself a factor militating against retroactivity.

■ Viewing all the circumstances surrounding the plea, I continue in my belief that the plea of guilty was entered knowingly and voluntarily and had a basis in fact.

## II.

Friedman asserts that his plea of guilty should be vacated because he was ineffectively assisted by his privately retained trial counsel. Present counsel recognizes, as he must, that the standard in this Circuit is that the assistance rendered "must be of such a kind as to shock the Conscience of the Court and make the proceedings a farce and mockery of justice." *United States v. Wight*, 176 F.2d 376, 379 (2d Cir. 1949). Friedman argues that this standard has been satisfied, as evidenced by trial counsel's failure to adequately investigate possible defenses, failure to make pretrial motions, and failure to file a notice of appeal.

According to the government's version of the crime, Friedman was arrested after a "buy-bust" of his codefendant by an undercover agent of the Drug Enforcement Administration. This arrest occurred in his apartment and Friedman was found to be in possession of 10,880 pills including Valium, Librium, Trianil, Elavinil, Demerol, Nycomine, Codeine, Fiornal with Codeine, and Tenuate Dospan. Trial counsel indicates in his affirmation submitted on this motion that Friedman told him that he had invited the agents in and allowed them to search the premises. A motion to suppress, therefore, would have been futile.

As to pretrial discovery, counsel was permitted to inspect the government's complete investigative file of the case, far more information than a defendant is entitled to obtain by law.

Post-plea admissions of guilt certainly do not waive an ineffective assistance claim, but they do reduce the likelihood that the most diligent and skillful counsel could have found a viable defense. Friedman has admitted his guilt in the pre-sentence investigation, at the time of sentence, and in his affidavit in support of his Rule 35 motion.

Finally, the assertion that trial counsel's lack of competence is indicated by his failure to file a notice of appeal from the judgment of conviction strikes me as ridiculous. At the time of plea, trial counsel stated on the record that he knew of no reason why the plea should not be accepted. Considering the joint decision by counsel and defendant to offer a guilty plea, I cannot fathom why trial counsel could have sought to appeal; present counsel has offered no suggestions.

■ The record demonstrates that Friedman was most adequately represented by his chosen counsel; his claim is, therefore, rejected.

### III.

Friedman's final claim is that this Court lacked adequate and accurate information at the time of sentence. His memorandum of law contains the following summary of defects:

"1. Your petitioner was not involved in the sale of drugs for an extended period of time;

"2. Your petitioner was going through a very difficult period in his life financially and with respect to his marriage;

"3. Your petitioner was in no way a pathological liar or a financial manipulator."

As to the first claim, the pre-sentence investigation contains a one page summary of the defendant's version of the crime and a summary of the government's version of approximately equal length. The report does not attempt to resolve the differences in the two versions. At the time of sentence, Friedman reiterated his claim that the instant offense was a "one-shot situation." Since the defendant had a full opportunity to present his version of the offense, nothing more was required.

The same may be said of Friedman's financial and personal problems. While I consider it unnecessary to elaborate for the purposes of this motion, it suffices to say that the pre-sentence report explored in detail Friedman's marital and financial difficulties. Several sources were interviewed on each score. At the time of sentence, Friedman and his counsel emphasized much of the information contained in the report concerning his financial condition. The only claimed error raised prior to sentence was concerning Friedman's outstanding indebtedness to the government. As trial counsel noted, since the preparation of the pre-sentence report, Friedman took steps to reduce his debt to the government from $12,000 to $1,000. The government did not dispute this new information and it was given full consideration by this Court. Neither the affidavit in support of this motion nor the memorandum of law point to any other specific errors or inadequacies. Friedman's affidavit in support of the earlier Rule 35 motion did not seek to contradict the information in the report regarding his personal and financial condition but rather to give different shades of meaning to it; that affidavit was given consideration prior to the denial of the Rule 35 motion.

The third alleged defect in the report was that it inaccurately portrayed the defendant as a "pathological liar or a financial manipulator." Actually, the report quotes one individual as labelling Friedman as a "pathological liar;" the individual's identity and association with the defendant are disclosed in the report and the reader of the report can easily judge the motivation of the declarant in making that assessment. The defendant does not dispute that the description was actually used.

The "Evaluative Summary" states that the probation department's "overall impression of the defendant is that of a financial manipulator . . . ." That portion of the report which provides the details of financial arrangements is separate and apart from the evaluative portion. While

the probation department's impression or evaluation is to be considered by the Court, it is merely an opinion and not a factual detail of the defendant's background.

■ Since trial counsel was given an adequate opportunity to examine the entire pre-sentence report, including the probation department's recommendation, to state his objections thereto, and to provide the defendant's version of the facts, nothing further was required of this Court. *See United States v. Robin*, Dkt. No. 76–1033 (2d Cir. Oct. 15, 1976).

The motion to vacate the judgment of conviction is denied. The motion will also be considered as an application pursuant to 28 U.S.C. § 2255; as such it is denied.

The pre-sentence report is ordered sealed and made a part of the record.

SO ORDERED.